# JAMES S. CLOGG *vs.* MARY E. McDANIEL.

*Depositions—Irregularity in Execution—Failure of Commissioner to Take Oath—Time of Making Objection—Assignment of Certificate in Benefit Society.*

Where a commissioner appointed to take testimony fails to take the oath prescribed by the commission before an officer authorized to administer it, this is such an irregularity as will justify the rejection of the evidence taken, if availed of within a reasonable time after the return of the commission; but when such objection is not made until it is too late to re-take the depositions before the hearing of the case it will not be allowed to prevail, and the opposite party will be held to have waived the irregularity,   In this case, a delay of two months after the return of the commission before making the objection was held to constitute a waiver.

When the return of the execution of the commission shows that notice was given that the testimony would be taken at a certain time and place, and it is stated that the depositions were taken pursuant to the notice, such a return sufficiently shows the time and place of the execution of the commission.

When a certificate in a benefit society is by its terms payable to a designated beneficiary, "her heirs and assigns," and the by-laws do not prohibit an assignment, the certificate is assignable.

The assignment to a creditor of a certificate in a benefit association, which is in the nature of a policy of life insurance, is not a wagering contract.

A certificate in a benefit society was assigned by the assured and his wife, the designated beneficiary, to an existing creditor in satisfaction of his debt, who thereafter paid the assessments.   Upon the death of the assured, the beneficiary alleged that the true intent of the parties was that she should receive $1,000 of the fund, and the creditor the balance, and that the writing of an absolute assignment was fraudulent.   *Held*, that the evidence failed to support these allegations, and that the assignee was entitled to the whole fund.

Appeal from a decree of the Circuit Court No. 2, of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*Thomas S. Hodson* (with whom was *Charles O. Melvin* on the brief), for the appellant.

*George M. Upshur*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The contention in this case has arisen out of the following facts. On the twenty-third of April, eighteen hundred and eighty-nine, Stephen MacDaniel took out a certificate of membership in the Peninsula Mutual Relief Association of Talbot County. The Association, by means of assessments, provided for the payment of a fund to the widows, orphans or other beneficiaries of its deceased members, or to such other persons as the beneficiaries might designate. The amount of the fund payable upon the death of a member was specified to be a sum equal to the aggregate received from a single death assessment, but in no event was that sum to exceed two thousand dollars. One of the stipulations provided that in case the certificate should be lawfully assigned or held as security, written notice thereof was to be immediately given to the association, and that due proof of interest should be produced with the proof of death. Two things were required. by this provision, *viz.*, immediate notice of an assignment and proof of interest with the proof of death. By the terms of the certificate issued to MacDaniel the asssociation agreed to pay to Mary E. MacDaniel, wife of the insured, " her heirs *or assigns*," the sum which might become due upon the death of Stephen MacDaniel. On October the seventh, eighteen hundred and eighty-nine, the beneficiary, Mary E. MacDaniel, and her husband, the assured, in consideration of the payment of all accruing dues, assigned the certificate to James E. Clogg, in proper form. Clogg paid all dues and assessments during the life of MacDaniel. On November the thirtieth, eighteen hundred and ninety-six, MacDaniel died. Both Clogg, the assignee, and Mary E. MacDaniel, the widow, claimed the fund payable under the certificate. Clogg claimed the whole of it, and Mrs.

MacDaniel claimed one thousand dollars of it. The Relief Association then filed a bill of interpleader bringing into Court the money realized by one assessment, and asking that the two contending claimants be required to interplead. In this bill the Relief Association referred to the assignment of the certificate to Clogg, as the evidence of Clogg's asserted title to the fund. The association made no denial of its obligation to pay the money to some one; nor did it dispute the right of Mrs. MacDaniel to assign the certificate. Both Clogg and Mrs. MacDaniel answered the bill. By the decree of interpleader Mrs. MacDaniel was made plaintiff, and Clogg was made defendant. Testimony was taken in behalf of the plaintiff before an examiner of Circuit Court No. 2; and in behalf of the defendant under a commission issued to Worcester County. The regularity of the execution of this commission was assailed by exceptions. These exceptions were sustained by the lower Court, and the whole of the evidence taken under the commission was excluded. A decree was signed awarding to Mrs. MacDaniel one thousand dollars of the fund brought into Court, and awarding to Clogg the residue after deducting all the costs of the proceeding. The total amount of the fund brought into Court was $1,538.16. The costs aggregated $166.80. Deducting this, there remained $1,371.36. Of this residue one thousand dollars was decreed to belong to Mrs. MacDaniel, and the remainder, $371.36, to Clogg. From this decree Clogg has appealed.

The exceptions to the admissibility of the testimony taken under the commission issued to Worcester County are in reality exceptions assailing the regularity of the execution of the commission, and having been sustained and all of the evidence adduced by Clogg having been thus excluded, the propriety of this decision lies at the threshold of the case and will, therefore, be considered at once. The commission was issued by agreement to John W. Staton. He took and subscribed the oath before the Clerk of the Circuit Court for Worcester County on Sep-

tember the twentieth, eighteen hundred and ninety-eight. He executed the commission the following day, and with the depositions taken under it, it was filed in Circuit Court No. 2, of Baltimore, on the twenty-sixth of the same month. By an order passed on November the eleventh the case was set down for hearing on December the eighth. On December the sixth the exceptions relied on to exclude the testimony taken under the commission were filed. These exceptions are founded on the assertions, first, that the commissioner did not take the oath required by law and as directed by the commission; and, secondly, that the return of the commissioner does not show the place where the commission was executed. With respect to the first of these grounds it must be conceded that the Clerk of the Circuit Court for Worcester County had no authority to administer to Mr. Staton the oath prescribed in the commission to be taken by a commissioner; but it does not thence follow, by any means, that this exception ought to have prevailed. The failure to take the oath, or, what is the same thing, taking it before an officer not authorized to administer it, is an irregularity in the execution of the commission not more serious, or at least not unlike, an omission to give notice of the time and place when and where the commission will be executed; and though both would justify the suppression of the evidence if availed of within a reasonable time after the return of the commission, neither will be allowed to prevail if sprung at a time when it would be impossible to retake the depositions before the case has been fixed and is taken up for hearing. The proper practice, when such objections are relied on, is to move, within a reasonable time after the return of the depositions, to suppress the evidence taken under the commission; and not to wait until it becomes too late to retake the testimony for use at the hearing. The law requires due diligence in both parties. Both must act with reasonable promptness. A failure to do this will be treated as a waiver of such informalities, because after an acquiescence,

which will be assumed as the result of mere passivity, it might, and most probably would, occasion both hardship and injustice, if either party to a cause were permitted at the last moment to rely on and successfully assert such irregularities as these. The rule is thus laid down in Mr. Miller's admirable work on *Equity Procedure*, sec. 219: " If the execution of a commission be irregular in the omission to give notice, or for other cause, the proper course is not to wait until the final hearing, and then seek to have the evidence excluded, but, within a reasonable time after the return, to move for the suppression of the evidence." See, too, *Barnum* v. *Barnum*, 42 Md. 251; *Sewell* v. *Gardner*, 48 Md. 178; *Cover* v. *Smith*, 82 Md. 611; *Howard* v. *Stillwell*, 139 U. S. 199. In the case before us the depositions were filed on September the twenty-sixth. More than two months elapsed before the exceptions were interposed, though the order setting the case down for hearing on December the eighth was served on the solicitor for Mrs. MacDaniel on November the fifteenth. This delay was unreasonable, and must be treated as a waiver of both of the irregularities relied on.

With respect to the objection that the return annexed to the commission does not show the time and place of the execution of the commission, it is only necessary to remark, in addition to what has already been said on the subject of waiver, that the facts do not sustain the objection. The record shows that the commissioner gave to the solicitor of Mrs. MacDaniel explicit notice that on September the twenty-first, at the hour of nine A. M., and in the office of C. O. Melvin, in the town of Pocomoke City, he would proceed to execute the commission. This notice was served on the solicitor on September the fifth, and was returned with the commission.. The return states that the commissioner attended on September the twenty-first, at nine A. M., " pursuant to notice, and *then* and *there* proceeded " to take the depositions of the witnesses produced. It is difficult to see how the commissioner could attend *pur-*

*suant* to notice without attending at the *time* and *place* designated in the notice; and as that notice was made a part of the return, obviously the return shows both the time and place when and where the commission was executed. There was consequently error in the first paragraph of the decree which excluded the evidence taken under the commission.

We come now to the merits of the controversy. In the answer of Mrs. MacDaniel it is alleged that when the assignment of the certificate was made to Clogg, it was agreed that out of the proceeds payable by the association upon the death of the assured, Clogg would turn over to her one thousand dollars: That she was induced to believe that this stipulation was incorporated in the assignment, but now discovers that it was not inserted: That neither she nor her husband could read and that before she affixed her mark to the assignment, the assignment was read over to her, and as read to her it contained the clause reserving to her the sum of one thousand dollars. She alleges that the clause securing her one thousand dollars was fraudulently omitted from the assignment at the instance of Clogg. In her answer to the bill of interpleader she does not claim *all* of the proceeds of the benefit certificate. Her contention, as there set forth, is, not that Clogg has no right to any part of the fund, but that he is not entitled to the *whole* of it; though in the brief of her counsel it is claimed that the assignment to Clogg is altogether void because a mere wager, a speculative and gambling transaction; and because contrary to the objects of the association and in conflict with its by-laws. These positions are not harmonious. If the assignment be wholly void, then no part of the proceeds are properly payable to Clogg; but if part of the proceeds are lawfully due to Clogg, as her answer admits, they are due in virtue of the assignment, and not otherwise, and then, certainly the assignment is not totally invalid.

The answer of Clogg denies most explicitly the alleged

agreement with respect to the reservation of one thousand dollars as claimed by Mrs. MacDaniel.

Treating the contentions of Mrs. MacDaniel in the inverse order in which they have just above been stated, but little need be said in regard to two of them.   It is claimed that the assignment to Clogg is void, because contrary to the objects of the association and in conflict with its by-laws.   The by-laws are absolutely silent on the subject. One of the objects of the association is the payment of a fund to widows, orphans or beneficiaries of its deceased members, or to "such other beneficiaries as they may have designated." The certificate of membership, in terms, makes the fund payable to Mrs. MacDaniel, "her heirs or *assigns*." It is not perceived how, in the face of these facts, it can be successfully asserted that the certificate is not assignable.

Nor is the assignment a wager or a gambling transaction. At the time of the assignment MacDaniel was indebted to Clogg in a small amount.   This debt was cancelled by the assignment of the certificate.   Even though thereafter Clogg had no insurable interest in MacDaniel's life, the transfer of the certificate to him was not in violation of law. *Rittler* v. *Smith*, 70 Md. 261 ; *Souder* v. *Home Friendly Society, &c.,* 72 Md. 511.   If this were a valid defence at all, it was one which the association might have made. Having admitted its liability by paying the money into Court, the question is entirely foreclosed. *Robinson* v. *Hunt*, 78 Md. 67.

Assuming, but by no means deciding, that the written assignment, which is absolute and unconditional, can be impeached, modified and changed by parol evidence, in this proceeding under the pleadings as they are framed, so as to make it read as though it contained upon its face a provision securing to Mrs. MacDaniel one thousand dollars of the proceeds of the assessment ; the evidence adduced to establish such a change is wholly insufficient, when the overwhelming contravening testimony is considered.   Mrs.

MacDaniel herself testifies that the assignment was intended to transfer to Clogg only so much of the proceeds as might be realized in excess of one thousand dollars; and that the latter sum was to be paid to her. . She further states that she was present when the assignment was prepared by Mr. Hargis in the store of Mr. Clogg, and that it was read over to her and, as read, contained a provision allowing her one thousand dollars of the fund and Clogg the balance.    This, apart from some pure hearsay—some statements made by Stephen MacDaniel to his son and his daughter-in-law, which were duly excepted to—is all the evidence offered to overcome the unequivocal terms of the written assignment.    On the other hand it was conclusively shown by Dr. Quinn, that *he*, and not Hargis, wrote the assignment.    It was proved by Hargis and Mason and Clogg that the assignment as it appears, without qualification or variation of any kind, was read over to Mr. and Mrs. MacDaniel and was then signed by them; and that not a word was spoken about her having any interest whatever in the proceeds.    Clogg emphatically denies that he ever entered into any agreement with Stephen MacDaniel or Mrs. MacDaniel, either before or after the assignment, to give Mrs. MacDaniel one thousand dollars or any other sum out of the proceeds of the certificate.    There were other witnesses who proved that MacDaniel had stated that he had assigned the certificate to Clogg because he was not able to keep up the payments; and it is not disputed that Clogg did, from the date of the assignment up to MacDaniel's death—a period of seven years—pay all dues chargeable to MacDaniel.    In view of this evidence, even were this a bill filed to procure a reformation of the terms of the assignment and to make them conform to the understanding of the parties, no Court could hold either that the assignment was fraudulently procured, or that it did not embody the actual agreement of the contracting parties. The assignment, as it was executed, has not been impeached or overthrown.    It must, therefore, stand; and standing, it

must be taken to express the intention and to contain the stipulations of those who signed it.    In terms it carries the whole fund paid upon the certificate ; and it assigns that fund to Clogg.    By the acts of the assured and the nominated beneficiary, Clogg became entitled to that fund. There is nothing illegal in the method by which he acquired that title ; and no valid reason has been given against his right to recover the money.    It is quite certain that if he had not kept the certificate alive, it would have lapsed long ago, and there would have been no fund to contend over. But be that as it may, his right to the fund under the assignment has not been successfully assailed, and the decree denying that right must consequently be reversed.    The record will be remanded that a new decree may be passed awarding to Clogg the whole fund, less the costs incurred and the counsel fees allowed on the original bill of interpleader.

> *Decree reversed with costs, and cause remanded that a new decree may be signed.*

(Decided June 20th, 1899).