# AGNES DOOLEY CLARK vs. EDITH B. CALLAHAN
## ET AL.

*Testimony of Non-resident Witnesses in Equity Causes—Hearing of Cause Within Less Than Prescribed Time After Return of Testimony—Waiver of Time—Ignorance of Beneficiary of Trust in His Favor—Promise by Assignee of Life Insurance Policy to Share Proceeds With Another as Condition of Assignment—Validity of Parol Trust of Personal Property—Charges Against Trust Fund.*

Under Code, Art. 35, sec. 18, the testimony of non-resident witnesses, not parties to the cause as well as that of parties, may be taken before a Notary Public in another State in the manner prescribed by section 17, both in equity causes and actions at law.

Code, Art. 16, sec. 241, requires testimony returned in an equity cause to be opened by the clerk and to remain in Court for ten days, subject to exception, before the cause shall be taken up for hearing unless such time shall be waived by consent. When a cause is heard within less than ten days after the testimony of non-resident witnesses has been returned, the consent of a party to the hearing is a waiver of the provision as to time, and he cannot object on appeal to the admissibility of the testimony.

Knowledge by the beneficiary that property has been or will be given to a third person in trust partly for his benefit is not necessary to a creation of a trust binding upon the donee.*

When property is transferred to one upon the faith of his promise to devide it between himself and another equity will enforce the trust thereby created.

When a man causes certain life insurance certificates to be made payable to his daughter upon her promise to him to share the proceeds of the insurance with the plaintiff, a valid trust is thereby created and the plaintiff is entitled to one-half of the proceeds.

If after causing certificates of life insurance to be transferred to the name of his daughter, so that she may collect the same upon his death, the assured retains possession of the certificates and the power to change the beneficiary, and his daughter subsequently promises to divide the proceeds with another person, a trust is thereby created in favor of that person, and it makes no difference that she may not have known of the the creation of the trust at the time it was declared.

*Appended to this case as reprinted in 10 L. R. A., N. S. 616, is a case note as to the necessity of beneficiary's knowledge of a trust.

The assured in certain policies of life insurance caused the same to be made payable to his daughter in lieu of his second wife, the former beneficiary, and the daughter, as a condition of the transfer, promised to pay one-half of the proceeds to the plaintifī. At the time of the transfer a suit for a divorce was pending against the assured by his wife. After his death his wife filed a bill to set aside the substitution of the daughter as the beneficiary and she brought two other suits against the daughter not relating to the policies. The daughter paid the wife a lump sum in settlement of all these suits, but the plaintiff did not consent to the compromise, and she had no concern in any of the suits except the one relating to the policies. *Held*, that the plaintiff, as the person entitled to one-half of the proceeds of the policies, should be charged with one-half of the costs and fees allowed in procuring their payment and with one-fourth of the amount paid in settlement of the suits by the wife.

*Decided April 26th, 1907.*

. .

Appeal from the Circuit Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*J. Kemp Bartlett* and *Charles Lee Merriken*, for the appellant.

Raphun in June, 1902, created a trust in favor of the appellant of one-half of whatever sums should be realized at his death from the two benefit certificates which he was carrying in the Order of Heptasophs and Order of United Workmen, and which, by reason of his domestic troubles, he no longer desired his wife to derive any benefit from in the event of her surviving him. As this Court has said in *Casualty Insurance Company's case*, 82 Md. 560, "In determining whether or not a trust has been created Courts will take into consideration the situation and relation of the parties, the character of the property and the purpose which the settlor had in view in making the declaration. No technical terms or expressions are needed." To the same effect are: *Gordon* v. *Green*, 10 Ga. 543; *Norman* v. *Burnett*, 25 Miss. 188; *Barry* v. *Lambert*, 98 N. Y. 306; *Perkins* v. *Ipsam*, 11 R. I. 268; *Estate of Stanley*

v. *Pence*, 160 Ind. 642; *O'Hara* v. *Dudley*, 95 N. Y. 412; *Matter of Carpenter*, 131 N. Y. 88. It is a well established principle that a parol declaration of a trust of personal estate is sufficient. *Smith* v. *Darby*, 39 Md. 277; *Reiff* v. *Horst*, 52 Md. 268; *Milholland* v. *Whalen*, 89 Md. 214; *Snader* v. *Slingluff*, 95 Md. 366; *Venable's Syllabus of Law of Real Property*, 131.

The authorities are uniform in holding that the Statute of Frauds does not extend to trusts of personalty and that such trusts may be created and proved by parol. *Perry on Trusts*, sec. 86; *Snader* v. *Slingluff*, 95 Md. *supra*; *Barry* v. *Lambert*, 98 N. Y. *supra*; *Hirsh* v. *Auer*, 29 N. Y. Supp. 917; *Hooper* v. *Holmes*, 11 N. J. Eq. 122–124; *Haxton* v. *McClaren*, 132 Ind. 235–240; *Williams* v. *Vreeland*, 32 N. J. Eq. 734 736; *Dowd* v. *Tucker*, 41 Conn. 197; *Chase* v. *Perley*, 141 Mass. 289–294; 28 *A. & E. Ency. of Law*, p. 870.

Nor is the trust rendered void by the appointment of a beneficiary as trustee. *Milholland* v. *Whalen*, 89 Md. 218; *Perry on Trusts*, sec. 297.

It has also been held that a trust may be proved by *circumstantial* evidence. *Lamb* v. *Girtman*, 26 Ga. 631; *Gadsden* v. *Whaley*, 14 S. C. 216.

It is the intention of·the donor and not the use of one particular term or another that will decide the question, whether a party does or does not take in a fiduciary character. *Hill on Trustees*, p. 101.

The facts of the case of *Hirsh* v., *Auer*, *supra*, are remarkably suggestive of the case at bar.

In *Buckingham* v. *Clark*, 61 Conn. 204, a testator bequeathed a sum of money to his daughter, and the balance of his property to his wife. Wishing to pay in his lifetime the amount bequeathed to the daughter, the testator and his wife gave a joint and several note to her for the amount, whereupon a new will was made, leaving the entire estate to the wife, with the understanding that if the note was not paid in the testator's lifetime, it should be paid by the wife from the estate so willed her. After testator's decease, the note was

disallowed as a claim against the estate; and it was held in a suit on the note against the wife, that as the note was signed by the wife in consideration of the property willed to her, it created a trust in plaintiff's favor in the property so willed.

In *Chase* v. *Perley*, 148 Mass. 289, it was held that an express trust in personal property may be created and proved by parol, and evidence that money was given to a person with oral directions to make certain payments out of it and to divide the remainder between himself and others is sufficient for that purpose. The plaintiff in this case produced evidence tending to show that the defendant, the plaintiff, and W. H. Perley were the only children of J. G. Perley, who died April 19th, 1883; that J. G. Perley, shortly before his death, gave to the defendant $5,050, orally directing him to deposit it in a bank and, after making certain gifts on behalf of J. G. Perley, and paying all his debts and expenses of settling his estate, to divide the balance then remaining between the plaintiff and defendant and their brother; that there remained in the hands of the defendant, after making such payments, a balance of about $5,000. The defendant introduced evidence tending to show that he received the money in question upon an agreement that after making payments referred to, the balance then remaining should belong to him. The evidence was contradictory and conflicting, but the Court held it sufficient to establish a valid parol trust.

In *Dowd* v. *Tucker*, 41 Conn. 197, the aunt of the respondent with whom she lived, and to whom by her will she had given all her property, upon her death bed desired to change her will and give a certain piece of real estate to a niece, and had a codicil prepared for that purpose. Before signing the codicil she wished to secure the consent of the respondent for the change and had him called in for the purpose. After hearing her, he replied that she was weak and she need not trouble herself to sign the codicil, but that he would deed the property to the niece and carry out her wishes. Trusting in his promises, she did not change her will. After her death, the respondent refused to convey to the niece. On a bill in equity

brought by her to compel him to convey, it was held that he held the property under a trust for her, which a Court of equity would enforce, and that the case was one of fraud, it being clearly inferable from his refusal to convey after the death of the testatrix, that he made his promise to her with an intention not to perform it; also that the procuring of property upon a promise which the party at the time does not intend to perform is a fraud, and it makes no difference whether the property is real or personal.

To the same effect is the case of *Needles* v. *Martin*, 33 Md. 609.

In *O'Hara* v. *Dudley* (95 N. Y. 403), it was held that where a person, even by silent acquiescence, encourages a testator to make a devise or bequest to him, with a declared expectation that he will apply it for the benefit of others, this has the force and effect of an express promise so to apply it, as if he does not intend so to do, the silent acquiescence is a fraud, and in the case of such a declared intention and promise, if the testator has named some certain and definite beneficiary, capable of taking the provision intended, the law fastens upon the devisee or legatee a trust which equity, in case of his refusal to perform, will enforce on the ground of fraud.

*Shields* v. *McAuley*, 37 Fed. Rep. 402, to the same effect. See also *Saylor* v. *Plaine*, 31 Md. 163. The question often arises in these cases as to whether the settlor intended to create a trust or obligation, or merely state the *motive* which led to the gift. *Perry on Trusts*, sec. 117.

But we submit that no such question can arise in the case at bar, because, for obvious reasons, Colonel Raphun could not be supposed to regard his daughter as sufficiently solicitous of Miss Dooley's welfare to divide gratuitously the proceeds of the certificates, nor is there any evidence whatever tending to show that he made the declarations with respect to Miss Dooley being the equal object, with his daughter, of his bounty as a mere statement of motive for the substitution of his daughter's name for that of his wife, with whom he had ceased to live in peace and harmony. It clearly appears, how-

ever, that he was exceedingly solicitous that it should be well understood that Miss Dooley was as much the object of his bounty as Mrs. Callahan. He had raised Miss Dooley since she had been a mere child, and clothed, fed, educated and supported her, and she was in every way, save by actually blood relationship, a daughter to him and was so treated by him. His own daughter had married against his will shortly after Miss Dooley had become a member of his family, and during a period of five or six years, he had seen very little of his own daughter, although he had become reconciled to her a short time before his domestic troubles led to a substitution of the beneficiary named in the certificates. What more natural, under the circumstances, than for him to remember the penniless orphan who had come into his life at the time of his displeasure with his daughter, and had been a daughter to him, had nursed him faithfully through his long illness, at a time when his wife had deserted him and his daughter, by reason of the demands of her own family, could do very little for her father.

*Conway W. Sams*, for the appellees.

There is no writing of any character whatever, made by the settlor, from which a trust in favor of the appellant, or in favor of any other person, could even be implied or surmised, and the appellee asserts, and the assertion is supported by the testimony of her brother, that the settlor, the assured under the policies, never by deed or word, or in any other manner, gave reason to believe that it was his intention that the appellant should have any share in the proceeds of the policies, or that the money paid under the policies was intended to be in the nature of a trust fund for the benefit of Mrs. Edith B. Callahan and Mrs. Agnes Clark, or for the benefit of Mrs. Callahan and any other person.

It is not apparent that, at the time of changing the beneficiary, so as to be Mrs. Callahan, instead of Mrs. Raphun, wife of the settlor, that the settlor had in mind the creation of any such trust in favor of Mrs. Clark as is sought to be

established, and the testimony given at the trial does not in-dicate that the witnesses believed that such was the settlor's intention at the time he had the change made. Nor does the fact of the change of the policies so as to name Mrs. Calla-han beneficiary, or the surrounding circumstances in connec-tion therewith, indicate any intention on the part of the set-tlor to create such a trust because of any change in the rela-tions existing between himself and Mrs. Clark after the change of beneficiary. The statements alleged to have been made by the settlor in the several conversations referred to in the testimony, if established as having been made by him, which statements are denied positively both by the appellee and her brother, would not, in the light of adjudicated cases, be sufficient to establish the fact of the creation of a trust which a Court of equity would enforce.

The creation of a trust in personalty, as well as in real estate, can only be consummated by a declaration positive and un-equivocal, and susceptable of no other construction. In the case at bar, there is no evidence and no testimony which meets these requirements. *Pomeroy Eq. Jur.*, sec. 1009; *Beach on Trusts*, sec. 52; *Bailey* v. *Irwin*, 72 Ala. 505; *Perry on Trusts*, sec. 77. It should be noted particularly that it is not alleged that Raphun ever indicated that he held the policies in trust for Mrs. Callahan, or for her and Mrs. Clark, and it cannot, therefore, be said that he was a trustee for them, or either of them. Nor is it alleged that he ever intimated that he considered Mrs. Callahan a trustee of the proceeds of the policies for the use of Mrs. Clark, wholly or in part. It is testified that he stated that he had made Mrs. Callahan the beneficiary, and that she knew what to do, and that Mrs. Clark was to receive one-half thereof, but this testimony is controverted by other equally as positive, that there was never any such statement made by him. The case of *Young* v. *Young*, 80 N. Y., 422, fully covers the principle involved in this case. See all *Hamilton* v. *Hull's Estate* 69 N. W. 484; *Gaylor* v. *City of La Fayette*, 115 Ind. 423; *Bever* v. *Bever*, 117 N. Y. 421; *Wason* v. *Colburn*, 99 Mass. 342; *Allen* v. *With-*

*row*, 110 U. S. 119 and *Williams* v. *Chamberlain*, 165 Ill. 210, which last cited case is almost directly in point.

The alleged statements made by Raphun, after the change of the beneficiary, the trial Court has said are not such as would justify a Court in holding that a trust had been created in favor of Mrs. Clark, or, in fact, declarations such as establish the creation of a trust, or an intention on the part of Raphun to make Mrs. Callahan trustee for the benefit of Mrs. Clark. In *Bagley* v. *Votram*, 68 Ill., 25, it will be noticed that the declarations of the insured were made after the policies had been assigned—and the assignment differs from this case in which we are now engaged only in the manner of the change of beneficiary—and were made to third parties, as in this case. The declaration of the alleged trust was in terms almost identical with the declaration relied upon in this case. Indeed, in that case there were written assignments of the policies upon what purported to be valuable consideration, while in this present case, there are no such declarations, and the Court is asked to accept in lieu thereof alleged statements of the deceased.

These declarations, if made, were made to third parties in the course of loose conversations, and in direct opposition to the terms of a written instrument, the policies, the very nature of which precludes the idea of an intention on the part of the deceased to create the relation of trustee and *cestui que trust* either between himself and Mrs. Callahan, or between Mrs. Callahan and Mrs. Clark. *Brewer* v. *Bowersox*, 92 Md. 574.

PEARCE, J., delivered the opinion of the Court.

The bill in this case was filed by the appellant against the appellees to procure an accounting from one of the appellees, Edith B. Callahan, for one-half the proceeds of certain benefit certificates received by her, and for an injunction against the said Edith B. Callahan, and the other appellee, Edward J. Callahan, her husband, restraining them from conveying away or disposing of a certain house and lot in Baltimore alleged to have been purchased by the said Edith B. Callahan partly

with a portion of the proceeds of said certificates, and to be the only tangible property owned by her. It appears in the evidence that the plaintiff, when about twelve years of age, was taken into the family of Col. Charles W. Raphun of Baltimore, a relative on her mother's side, and that she resided there until his death in February, 1903, when she was about nineteen years of age, being maintained and cared for by him as if she were his child, and that he always expressed and evinced a strong affection for her. Col. Raphun was at the time of his death an official in the office of the Collector of the Port of Baltimore, and was a man of small means, but held a benefit certificate for two thousand dollars in the Ancient Order of United Workmen, and another for three thousand dollars in the Improved Order of Heptasophs, both payable at his death. These certificates were originally payable to his second wife, Estelle V. Raphun, from whom he was separated about six months before his death, she having filed a bill for divorce, which was pending when he died. After this separation, on June 5th, 1902, he surrendered the original certificates, and new certificates were issued in which Mrs. Callahan was by his direction named as the beneficiary. Col. Raphun had three children, one daughter, Mrs. Callahan, by his first wife, who was married in 1899, and thereafter did not live with her father, and two sons one of whom resided in Chicago, and the other was under twenty-one and lived at home. The bill alleged that about the time of the separation, Col. Raphun declared his intention to have his said daughter and the plaintiff substituted as joint beneficiaries under said benefit certificates, so that the proceeds thereof upon his death should be paid to them in equal shares, but found that this could be done because under the rules of said associations, only blood relatives of members could be made beneficiaries; and that thereupon, after consulting his daughter, and obtaining from her a solemn promise that the proceeds of said certificates, should be equally divided between herself and the plaintiff when paid, he caused his said daughter to be made the beneficiary of said certificates in the place of his wife, upon the

express trust and condition that said daughter should share said proceeds equally with the plaintiff, and that said trust was accepted by his daughter upon such condition. Soon after Col. Raphun's death, his wife brought a suit in replevin against Mrs. Callahan, and also an action of slander, and claimed to be entitled to the proceeds of said benefit certificates. In May, 1904, while these litigated matters were pending, including interpleader proceedings between Mrs. Raphun and Mrs. Callahan as to their respective rights in the proceeds of said benefit certificates, Mrs. Callahan, as the bill alleges, without the knowledge or consent of the plaintiff, compromised all the pending litigations between her stepmother and herself by payment to her out of the proceeds of said benefit certificates, of the sum of $1,500, and the payment of certain costs and expenses attending said litigations, amounting to $774.91, and leaving a net amount coming to her from said certificates of $2,725.09.

The defendants answered the plaintiff's bill denying all the material allegations, and specifically denying that any promise was ever made by Mrs. Callahan to pay any part of the proceeds of said certificates to the plaintiff, or that the name of Mrs. Callahan was substituted as beneficiary therein upon any trust or condition whatever; denying that she accepted any trust whatever, and alleging (under oath) that she could not have done so, because she was not aware until after her father's death that she was named as beneficiary in said certificates. The answer admitted the compromise above mentioned, but alleged that it was made with plaintiff's knowledge, and alleged that the plaintiff was largely the cause of the slander suit mentioned. Testimony was taken by both parties, and after hearing and argument, the Court, being of opinion that no valid trust was created by Col. Raphun in the said benefit certificates, the plaintiff's bill was dismissed, and this appeal is taken from that decree.

Before considering the principal question in the case we will advert to the exclusion of certain testimony which was offered by the plaintiff. The depositions of Mr. and Mrs. Stiles, res-

idents of West Virginia, and of Mrs. Dooley, the mother of the plaintiff, a resident of Virginia, were taken before a notary of those respective States in the manner provided by section 17 of Article 35 of the Maryland Code, after five days notice to the opposite party. When it was proposed to read these depositions, the defendants objected, and on their motion the depositions were excluded or suppressed. The principal objection made was that this method of taking the testimony of non-resident witnesses, not parties to the cause, is only available in Courts of law, and that the only method of taking the testimony of such non-resident witnesses in Courts of equity, is under a commission issued from the Court under its own rules, but it was also contended that as section 241 of Article 16 requires evidence taken and returned to be opened by the clerk, and to remain in Court ten days subject to exception, before the cause shall be taken up for hearing, unless, by agreement of the parties, such time shall be waived, and as in this case the testimony had only laid in Court five days, and there was no waiver of time when the cause was taken up for hearing, the depositions were properly excluded.

Sections sixteen and seventeen of Article 35 should be read together, and so read (unqualified by any other provision of law in *pari materia*), section 17 must be regarded as applying only to the Courts mentioned in section 16, that is Courts of law, notwitstanding the broader language of section 17. In *Goodman* v. *Wineland*, 61 Md. 456, it was held that the provisions of section 16, were not applicable to non-resident parties, except in the discretion of the Court upon satisfactory proof of permanent inability to attend the Court in person. But section 18 of Article 35 (chapter 399 of 1898), provides that "the testimony of non-resident parties to a cause, may be taken, whether in their own behalf or by the opposite party, in the same manner as the testimony of other non-resident witnesses; this to apply to Courts of law and equity, and to proceedings before magistrates." The defendants contend that as these witnesses are not parties, that section cannot affect the question; but we cannot agree to this. If that were the case,

non-resident *parties* would be put in a better position than other non-resident witnesses, and this can hardly be supposed to have been the purpose of the law makers. We think the purpose was to do away with all discrimination, in this respect, between non-resident parties, and other non-resident witnesses, and also to permit the taking of the testimony of any witnesses in Courts of equity as well as in Courts of law, under any method open to non-resident witnesses not parties to the cause. The words used in section 18, "in the same manner as the testimony of other non-resident witnesses," must be taken not only to mean that parties are to have the same privileges as other witnesses, but also that other witnesses are to have the same privileges as parties, both in Courts of law and equity.

Nor do we think the fact that these depositions had not laid in Court ten days warranted their exclusion. The law does not forbid reading the depositions in such case. It forbids that the case be taken up for hearing without a waiver of such time. The proper course was to object to the taking up of the case, and consent to take it up should be held to operate as an implied waiver of time. In *Clogg* v. *McDaniel*, 89 Md. 419, it was held that irregularities in the execution of a commission which might justify the suppression of the evidence if availed of at a proper time and in the proper manner, would not be allowed to prevail "if sprung at a time when it would be impossible to retake the depositions before the case has been fixed and taken up for hearing," and the rule is so laid down in *Miller's Eq. Proc.*, sec. 219. We think these depositions should not have been excluded.

We have carefully read and considered all the testimony, and it amply sustains all the material averments of fact contained in the bill. Col. Raphun told Mrs. Stiles in September before his death that the plaintiff had nursed him faithfully; that she had always been as a daughter to him, and that hers was the only care he had in his illness; that he had meant to adopt her, but had put it off too long, but that he had amply provided for her, and he told Mr. Stiles subsequently that he

had made the same provision for her as for his own daughter. Mr. and Mrs. Stiles were the adopted parents of the plaintiff's younger sister, which explains their interest in the plaintiff.

The plaintiff herself testified that she lived seven years in Col. Raphun's family, going there at twelve years of age; that Mrs. Callahan married about four years before her father's death, and against his consent, which produced an estrangement for a time, though there was a reconciliation later, and that Mrs. Callahan did not live in her father's home after her marriage, but came there one month before his death and remained until he died; that in the summer before his death he told plaintiff in Mrs. Callahan's presence upon the steps of their dwelling, that he had transferred the certificates to his daughter upon condition that she should share the proceeds equally with plaintiff, and that Mrs. Callahan said she would observe his wishes; and that on a later occasion he repeated this statement and Mrs. Callahan said, "Yes, papa, I will do just as you wish."

Mrs. Dooley testified that three or four days before Col. Raphun's death, she heard Mrs. Callahan promise him she would divide the insurance with Agnes.

The plaintiff testified that Col. Raphun said he had made the transfer of the certificates before he told his daughter in her presence of the condition upon which the transfer was made, but Mr. Studebaker testified that Col. Raphun discussed the proposed transfer with him several times before it was made, and then said it was to be made to his daughter upon condition that Agnes should receive one-half the proceeds, and afterwards told him he had made the change and had carried out his previously declared intention. He also testified that in December, 1902, or January, 1903, Col. Raphun referred to the transfer of these certificates, and said that Edith, his daughter, understood the conditions upon which they were changed, and she replied, "Papa, don't worry about that, your wishes or the conditions will be carried out fully."

Mrs. Callahan denied that her father ever mentioned Agnes in any way to her in connection with these certificates, and

said she had never known or heard that the certificates had been put in her name until after her father's death, when her husband, three or four hours after her father's death, took them from his papers at the Custom House, and handed them to her. On cross-examination she admitted her father had told her they had been put in her name, and when asked whether the conversation upon the steps of the dwelling testified to by the plaintiff had occurred, her only reply was that she did not remember it. She denied ever seeing Mr. Studebaker in her father's house, or that she had ever spoken to or with him, but both Mrs. Studebaker and Mary Dooley, a sister of plaintiff, testified that she was personally acquainted with Mr. Studebaker, and named two occasions when she was engaged in conversation with him, and plaintiff testified that Mr. Studebaker was a frequent visitor of Col. Raphun during his illness, and that in January, 1903, he was in the sick room conversing with him, and that Mrs. Callahan was in the room during the visit, none of which testimony was denied or contradicted by Mrs. Callahan. In March, 1904, while the litigation before mentioned with Mrs. Raphun was pending, and while the plaintiff was with Mrs. Stiles in West Virginia, she wrote Agnes, "if I had that insurance, I do believe I would spend *all my share of it* to fight her, that is the way I feel; if anything else turns up I will let you know." When confronted with this letter, and asked what she meant by *her share*, she said she meant *all;* that she knew the meaning of the word *share*, but she meant the share was *all* hers, though she knew that a share was less than all. There is not a particle of evidence that the plaintiff was in any way interested in the litigation referred to as the replevin and slander suits, though of course indirectly interested in the certificates, and there is no evidence that she ever assented to or knew of any proposed compromise of any litigation.

The first and only reference to a compromise is made in Judge Sams letter of May 24th, 1904, to plaintiff stating that "the four cases had been compromised after careful deliberation, for the reasons that litigation is more or less uncertain

and Mrs. Callahan was far from well," and adding, "I am authorized to send you on the part of Mrs. Callahan $700 as a present." When plaintiff under advice of Mrs. Stiles, being without means to conduct litigation away from home, or at all, determined to accept the $700, Mrs. Callahan promptly reduced *the gift* to $500, which plaintiff refused and instituted these proceedings.

From this review of the testimony we cannot hesitate to hold that the averments of fact upon which the plaintiff relies to sustain her claim have been fully made out, and that the compromise made by Mrs. Callahan of the litigation with Mrs. Raphun, was made without the knowledge or consent of the plaintiff and constitutes no defense to her claim.

The controlling question in the case however, is whether in transferring these certificates to Mrs. Callahan, Col. Raphun created a valid trust in favor of the plaintiff as to one-half of the proceeds of these certificates.

In *Smith* v. *Darby*, 39 Md. 277, it is said, "It is a well established principle that a parol declaration of a trust of personal estate is sufficient."

In *Hill on Trustees*, p. 101, it is said, "Any expression manifesting an intention that the donee of property is not to have the beneficial enjoyment of the whole, or some part of it, will be binding on the conscience of the trustee, and will in equity effectually exclude any claim by him to the beneficial interest. For this purpose, it is by no means necessary that the donee should be expressly directed to hold the property to certain 'uses,' or in 'trust,' or 'as trustee.' It is one of the fixed rules of equitable construction, that there is no magic in particular words; and any expressions that show unequivocally the intention of the parties to create a trust, will have the same effect."

In the *Casualty Ins. Cos. case*, 82 Md. 560, this Court has said, "In determining whether or not a trust has been created, Courts will take into consideration the situation and relations of the parties, the character of the property and the purpose which the settlor had in view in making the declaration. No

technical terms or expressions are needed.   It is sufficient if the language used shows that the settlor intended to create a trust, and clearly points out the property, the beneficiary, and the disposition to be made of the property."

In *Reiff* v. *Horst*, 52 Md. 256, Horst received from Eshleman $400 as a gift, and not as a loan or trust, and eleven years thereafter got $2,000 more, not as a loan but to be held in trust for his children, and then for the first time it was agreed and understood that the $400 previously given should also be treated and held in trust the same as the $2,000, and it was held that a trust was impressed upon the $400, because "there was no uncertainty·in the subject matter or object of the trust, nothing optional or indecisive."

To the same effect are *Milholland* v. *Whalen*, 89 Md. 214, and *Snader* v. *Slingluff*, 95 Md. 366, "Nor is a trust rendered void by the appointment of a beneficiary as trustee." *Milholland* v. *Whalen, supra*, 218.

We do not understand the principles announced in the cases cited, to be questioned seriously by the defendant, but it was contended by her that according to the plaintiff's own testimony she had no knowledge of the creation of the alleged trust until after the certificates had been transferred to Mrs. Callahan, and the argument assumed, as a consequence, that the settlor had effectually parted with the dominion over the property before the declaration of any trust, and that after the property had vested in Mrs. Callahan, it was then too late to fasten a trust upon the property.   It is true that the plaintiff had no knowledge of the creation of any trust until after the certificates were transferred, but it was not necessary to the validity of the trust that *she* should have such knowledge.   It is only necessary that the donee should have knowledge of the intention of the settlor to create the trust, in order to fasten the trust upon the conscience of the donee.   We think upon all the testimony in the case, that the proof is clear and satis-factory that the trust was declared at or before the time of the transfer of the certificates and that it was made known then to Mrs. Callahan.   She denies this, it is true, but her testimony

is so weakened by its numerous contradictory and inconsistent statements that little reliance can be placed either in its accuracy or probative force.    Moreover Mr. Studebaker said that Col. Raphun "in numerous conversations" with him told him that he intended to transfer the certificates to Mrs. Callahan "upon the condition that Agnes Dooley should receive one-half of the amount of the policies."    Mrs. Callahan after first testifying in chief, and also swearing in her answer, that she did not know the certificates were in her name until after her father's death, in the next question but one, said, "My father said: 'Edith, I have changed the name from Mrs. Raphun, my wife, to your name, and you are my daughter and you are to have these policies.'"    We are not called on to assume that though Col. Raphun repeatedly declared his intention to create this trust, and after the transfer of the certificates, several times in the presence of at least two different persons, reminded Mrs. Callahan of the terms of the trust, he yet neglected and failed to declare to her at or before the transfer, the conditions upon which he had so deliberately determined and so clearly declared to others.    Such an assumption would be contrary to all the inherent probabilities of the situation, and would be to shut our eyes to inferences as strong and clear as any that control the actions and conduct of practical men in all the affairs of life.    But there is another and equally satisfactory answer to this position of the defendant.    This is not a case where absolute dominion over the subject of the trust is parted with by the donor.    Where an absolute and unconditional gift of money or property is made, and subsequently the donor attempts to impress a trust upon the subject of the gift, it might be conceded the attempt would be futile.    Here, after the transfer of these certificates to Mrs. Callahan's name, Col. Raphun retained the possession of them up to the moment of his death, and he had the same power and right, at any time, without the consent of his daughter, to return them to the Orders, and obtain other certificates, naming other beneficiaries, that he exercised when he surrendered the original certificates in the name of his wife, and obtained those in the name

of his daughter.   If it were conceded then, that Mrs. Callahan was substituted as beneficiary without the creation of any trust in the proceeds thereof at or before that time, and the trust was *subsequently* declared by him, and accepted or assented to by Mrs. Callahan as established by the testimony of Mr. Studebaker, Mrs. Dooley and the plaintiff herself, can it be doubted that Col. Raphun could and would have revoked the substitution of Mrs. Callahan if she had, either at the time of the attempt to create the trust, declined to execute it, or having assented thereto, subsequently informed him she would not execute it?   Can she now, after securing to herself the fruits of these certificates by repeated assurances that she would carry out her father's directions to share the proceeds with the plaintiff be permitted, to repudiate her promises after his death, and thus defraud both the dead and the living? We think not.   In *Hirsh* v. *Auer*, 29 N. Y. Supp. 917, a case almost identical with the present, the Court adverted to the revocable character of the interest of a beneficiary under such a certificate, and intimated strongly the view we have expressed, and that case was affirmed on all points in 146 N. Y. 17. Such conduct as Mrs. Callahan's, even assuming that the creation of the trust was subsequent to her substitution as beneficiary, constitutes fraud, and gives jurisdiction to equity to defeat its consummation.   By assenting to her father's wishes and directions she led him to make no other disposition in favor of the plaintiff, and fastened upon her own conscience a trust or confidence which she cannot repudiate without fraud, and which a Court of Equity will enforce.   The principles involved in this view are well illustrated in *Hirsh* v. *Auer*, *supra*, in *Hooper* v. *Holmes*, 11 N. J. Eq. 122; *Williams* v. *Vreeland*, 32 N. J. Eq. 736, and in *Dowd* v. *Tucker*, 41 Conn. 197, and in *O'Hara* v. *Dudley*, 95 N. Y. 403.

We therefore hold there was error in dismissing the plaintiff's bill, and that she is entitled to an accounting and a decree *in personam* against Mrs. Callahan for one-half of the amount of said certificates less such credits as are allowed according to the accounting we shall direct.

It appears from Exhibit No. 1 filed with the plaintiff's bill and from the testimony of Mr. Wm. C. Smith, counsel for Mrs. Raphun, in all the litigation mentioned by him, that there were four separate cases. 1st. The divorce case of *Raphun* v. *Raphun*. 2nd. The case of *Raphun* v. *Callahan Dooley, and Lingenfelder, as Ext. of Col. Raphun*, a bill in equity to set aside the substitution of Mrs. Callahan as beneficiary named in the certificates. 3rd. The replevin case of Mrs. Raphun against Mrs. Callahan, and 4th, the slander suit of Mrs. Raphun against Mrs. Callahan. It also appears from Exhibit No. 1 that fees were allowed by the Court, amounting to $128.30 out of the proceeds of the certificates paid into Court. The plaintiff was interested equally with Mrs. Callahan in defeating the proceeding of Mrs. Raphun to set aside the substitution of Mrs. Callahan as beneficiary and it is therefore proper that she should be charged with one-half of the fees allowed in procuring payment into Court of the proceeds of these certificates, and of whatever costs were paid, or are properly chargeable to the defendants, in the bill to set aside the substitution of Mrs. Callahan as beneficiary. But the plaintiff was in no manner interested in the result of the litigation either in the divorce case, the replevin case, or the slander case, and she is not chargeable with any part of the costs in these cases.

Mrs. Callahan also paid Mrs. Raphun a lump sum of $1,500 in compromise and settlement of all these cases. The plaintiff was only interested in the certificate case, and though she was not consulted at all about any compromise, we think she should bear some part of the $1,500 as the consideration for settling the certificate case. The divorce case was terminated by Col. Raphun's death, and the plaintiff had no possible interest in the result of that case nor in the replevin case, which is not shown to have been of much importance to any one, and it may be reasonably assumed that the greater part, if not the whole of this $1,500 was paid to settle the certificate suit and the suit for slander, and that one-half of that sum may be apportioned to each of these cases. The plaintiff was equally interested with Mrs. Callahan in the former, but had no interest

in the latter, and upon that basis she should be charged with one-fourth of $1,500, viz, $375.

It also appears from Exhibit No. 1 that fees, in addition to those allowed for payment of the certificate money into Court, were paid amounting to $500, and if upon investigation these fees are found to be reasonable and proper in amount and to have been paid as the $1,500 was in a lump sum for professional services in settling the certificate and slander cases, the plaintiff ought also to be charged with one-fourth of that item. She should also be charged with $70, which she testfied she received from Mrs. Callahan after Col. Raphun's death, and which presumably was paid in anticipation of her half of the proceeds of the certificates as it was paid before Mrs. Callahan had repudiated the trust.   The net balance ascertained upon such accounting should bear interest from May 25th, 1904, when Mrs. Callahan received the proceeds of the certificates from the Clerk of the Court, and offered the plaintiff a present of $700.

As the evidence shows that the house, No. 1822 West North avenue, Baltimore City, is held by Mr. and Mrs. Callahan as tenants in common, the decree to be passed on the accounting directed should be a personal decree against her for the sum found to be due, and inasmuch as she has testified that she has in her possession two bonds of the Anacostia and Potomac R. W. Co. for $1,000 each, purchased with the proceeds of these certificates, and $500 cash in bank derived from the same source, all representing and constituting part of the trust fund, the Circuit Court should order her forthwith to bring said bonds and cash into Court to await the result of the accounting ordered.

> *Decree reversed, and cause remanded for further proceedings in conformity with the views herein expressed. The appellees to pay the costs above and below.*