RICHARD M. COYNE et al. vs. THE SUPREME CON-
    CLAVE OF THE IMPROVED ORDER OF HEPTA-
    SOPHS et al.

*Promise by Beneficiary in Death Benefit Certificate to Pay the Proceeds
    to a Third Person—Validity of Parol Trust.*

When one who holds a life insurance certificate in a beneficial order, causes
    the same to be made payable to a certain person upon the faith of his
    oral promise to pay the proceeds to a third party, a valid trust is thereby
    created, which will be enforced against the beneficiary named in the
    certificate.

*Decided May 15th, 1907.*

Appeal from the Circuit Court No. 2, of Baltimore City
(WICKES, J.)

The cause was argued before BOYD, PEARCE, SCHMUCKER,
BURKE and ROGERS, JJ.

*J. Cookman Boyd* and *Emil Budnitz*, for the appellants.

*W. Browne Hammond*, for Margaret Coyne, appellee.

*Olin Bryan*, filed a brief for the Supreme Conclave, appel-
lee.

BURKE, J., delivered the opinion of the Court.

This record brings up for review the propriety of an order
of the Circuit Court No. 2, of Baltimore City, by which a de-
murrer to the bill of complaint in this case was sustained, and
the bill dismissed.   The facts are that Edward Coyne, the
father of Richard M. Coyne, Raymond W. Coyne, and Rob-
ert H. Coyne, infants, was a member of the J. F. Wiessner
Conclave No. 458 of the Improved Order of Heptasophs; that
by reason of his membership in that Conclave, he was entitled
to a death benefit certificate in the Supreme Conclave of the

Improved Order of Heptasophs, which certificate was duly issued to and accepted by him on June 25th, 1900; that the certificate was payable to Annie M. Coyne, his wife, who was designated as beneficiary, and by which certificate the defendant, the Supreme Conclave of the Improved Order of Heptasophs, promised and bound itself to pay out of its benefit fund to Annie M. Coyne, the sum of one thousand dollars within sixty days from the receipt of satisfactory proof of the death of the said Edward Coyne. Annie M. Coyne died in the lifetime of her husband, and he, in accordance of the constitution and by-laws of the Supreme Conclave of the Improved Order of Heptasophs, created a change in the beneficiary under the certificate by surrendering the same, and having a new certificate issued in which the defendant, Margaret Coyne, was named as beneficiary.

Although Margaret Coyne was designated as the beneficiary under the new certificate without any qualification upon the face thereof, it was understood and agreed between Edward Coyne and the said Margaret Coyne, that the death benefit of one thousand dollars, upon its receipt by the said Margaret, should be paid to Henrietta Buck, for the support and maintenance of Richard M. Coyne, Raymond W. Coyne, and Robert H. Coyne; that Margaret Coyne agreed with and promised the said Edward Coyne that she would pay the proceeds of the benefit certificate to Henrietta Buck for the uses and purposes above-mentioned; that Edward Coyne at first desired to designate the said Henrietta Buck as beneficiary in the certificate, but was informed that under the constitution and by-laws of the Supreme Conclave of the Improved Order of Heptasophs he was not permitted to do, because she was not within the degree of relationship required by its constitution and by-laws.

Edward Coyne departed this life on the second of September, 1906, and satisfactory proof of his death has been transmitted to the Supreme Conclave of the Improved Order of Heptasophs, in which proof of death the infant children of said Edward Coyne, whose names have been mentioned, were des-

ignated as claimants, but Margaret Coyne, notwithstanding the agreement between herself and Edward Coyne, hereinbefore stated, now claims the fund in her own right.

If these facts be true, it cannot be doubted that the proceeds of the death benefit certificate when paid to Margaret Coyne should be charged with a trust in her hands in favor of the infant children of Edward Coyne. The facts are fully sufficient to raise a valid trust, which a Court of equity should enforce. "No precise form of words is necessary to create a trust, but the intention must be clear. The fact that a trust in lands is created must be not only manifested and proved by a writing properly executed, but it must also be manifested and proved by such a writing what the trust is. The declaration of trust, whether written or oral, must be reasonably certain in its material terms; and this requisite of certainty includes the subject matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interest which they are to have, and the manner in which the trust is to be performed. If the language is so vague, general, or equivocal, that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail. No particular technical words need be used; even the words "trust" or "trustee" are not essential; any other words which unequivocally show an intention that the legal estate was vested in one person, but to be held in some manner, or for some purpose on behalf of another, if certain as to all other requisites, are sufficient." 2 *Pom. Eq. Juris.*, sec. 1009.

This Court in the *Casualty Ins. Company's case*, 82 Md. 560, said: "In determining whether or not a trust has been created Courts will take into consideration the situation and relations of the parties, the character of the property and the purpose which the settlor had in view in making the declaration. No technical terms or expressions are needed. It is sufficient if the language used shows that the settlor intended to create a trust, and clearly points out the property, the beneficiary, and the disposition to be made of the property."

The allegations of the bill, which we have in substance

stated, are sufficiently certain and definite as to the subject matter of the trust, the persons to enjoy it, and the manner of its disposition to gratify the requirement of law as to the creation of a valid trust. The subject of the trust being personal property, it may be created by parol, and established by parol evidence. The authorities appear to be uniform in holding that the Statute of Frauds does not extend to trusts of personal property, and that such trusts may be created and proved by parol. It has been so held by this Court in a number of cases, among which are the cases of *Smith* v. *Darby*, 39 Md. 277; *Reiff* v. *Horst*, 52 Md. 268; *Snader* v. *Slingluff*, 95 Md. 366.

There is also a class of trusts which arise *ex maleficio*, and equity in order to reach the possessor of what in conscience belongs to another turns him into a trustee. "Thus, if a man in confidence of the parol promise of another to perform an intended act, should omit to make certain provisions, gifts or arrangements, by will, or otherwise, such a promise would be specifically enforced in equity, although founded on a parol declaration creating a trust contrary to the Statute of Frauds, for it would be a fraud upon all other parties to permit him to derive a benefit from his own breach of duty and obligation." *Story Eq. Juris.*, sec. 781 (13 ed.) The cases of *Catland, Extr.* v. *Hoyt*, 78 Maine 355, and *Hirsh et al* v. *Auer*, 146 N. Y. 16., are very similar in their facts to the case at bar. In the former case David B. Catland held a certificate in the United Order of the Golden Cross by the terms of which the money that should become due upon it was to be paid to the defendant, who, after the death of the insured, received the sum of $1,959.60. The plaintiff, Catland's executor, claimed and offered evidence, tending to prove an oral agreement between the defendant and the deceased, by the terms of which the defendant promised that, after deducting what should be due from the deceased to him, he would pay the balance to the heirs of the deceased. The defendant objected to this evidence upon the ground that it tended to vary the terms of the written agreement between the deceased and

the Insurance Company, and further, if admitted, would show a promise by the defendant to pay, not to the deceased, but to his heirs, and that such a promise would not support an action by the executor. The objections were overruled, and the plaintiff obtained a verdict. In disposing of these objections, the Court said: "The oral evidence was not in conflict with the written contract. It was offered, not to vary or control the contract between the deceased and the Insurance Company, but to show another, and an independent contract between the deceased and the defendant. It was offered, not to show that the defendant was not to receive the money, but to show what he was to do with it after receiving it."

In the latter case, John Hirsh, at the time of his death held a death benefit certificate in the Ancient Order of United Workmen the proceeds of which were payable at his death to his wife. Mrs. Hirsh, having died in the life time of her husband, he surrendered the certificate, and received a new one in which his sister, Clara Auer, was designated as the beneficiary. Clara Auer collected $2,000 from the Order in full settlement, and surrendered the certificate. At the time the second certificate was taken out there was an agreement between John Hirsh and Clara Auer, the beneficiary, that when she received the money from the Order on the certificate she would expend a sum of money, not exceeding $500 for funeral expenses and a monument, and would divide $1,500 equally between his children. In dealing with this state of facts the Court said: "We see no legal objection to the agreement made by the insured and the beneficiary in this case. It in no way interfered with the contract rights of the society issuing the insurance, nor did it vary the certificate in any manner; the insurance was paid to the beneficiary named, and the agreement was in harmony with the objects of the society. The original certificate was payable to the wife of John Hirsch, and when she died John Hirsh selected his sister to act as beneficiary and disburse the money in the matter indicated for the benefit of his infant children. It was competent for Clara Auer to agree with her brother to receive the

proceeds of his life insurance, subject to such trust as he might create. The fact that the insured could have at any time changed the beneficiary named in his certificate has no bearing upon the question as now presented; but he did not, as a matter of fact, exercise that right, and his sister collected the insurance impressed with the trust created by the agreement, which the trial Court has found was made by the parties in interest."

In view of the recent decision of this Court in the case of *Agnes Dooley Clark* v. *Edith B. Callahan and husband*, 105 Md. 600, wherein the precise question presented by the demurrer in this case was thoroughly considered and settled adversely to the contentions of the appellees, further discussion of this case is unnecessary. For the reasons stated, the order appealed against must be reversed.

> *Order reversed, and cause remanded,*
> *with costs to the appellants above*
> *and below.*