## BLAKE v. OLD COLONY LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. November 19, 1913.)

### No. 3,722.

INSURANCE (§ 21*)—FOREIGN INSURANCE COMPANIES—DEPOSIT OF SECURITIES—TRUST.

A deposit of securities by a foreign life insurance company with the superintendent of insurance of a state, required by him as a condition to the granting of a license to do business in the state, but not required by the statutes of the state, did not create a trust in favor of domestic policy holders of the company, where there was no agreement to that effect and no evidence that such was the intention of the company, and on withdrawal from the state the company is entitled to a redelivery of the securities.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 23; Dec. Dig. § 21.*]

In Error to the Circuit Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action at law by the Old Colony Life Insurance Company against Frank Blake. Judgment for plaintiff, and defendant brings error. Affirmed.

Elliott W. Major, Atty. Gen., and Campbell Cummings, Asst. Atty. Gen., for plaintiff in error.

Silver & Dumm, of Jefferson City, Mo., for defendant in error.

Before HOOK and SMITH, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SMITH, Circuit Judge. The state of Missouri has an insurance department, the chief officer of which is designated as the "Superintendent of the Insurance Department." Mr. Robert G. Yates held this office in the years 1903 and 1904. He was then succeeded by W. D. Vandiver who in turn was succeeded by the plaintiff in error, hereafter called the defendant, Frank Blake. In 1903 and 1904 Mr. Joseph B. Reynolds was the actuary of the department. The laws of Missouri have at all times here material contemplated the organization of: (1) Life and accident companies on the joint-stock or mutual plan, or the two combined; (2) assessment insurance companies; (3) companies on the stipulated premium plan; and others. This was an action in replevin by the Old Colony Life Insurance Company, hereafter called the plaintiff, against Frank Blake, to recover three notes and trust deeds given to secure the same. The parties filed a stipulation in writing, waiving a jury as provided in section 649 of the Revised Statutes (U. S. Comp. St. 1901, p. 525). The court made special findings of facts substantially as follows:

This is an action of replevin for securities, amounting to $5,000, deposited by the Cosmopolitan Life Association on or about October 17, 1903, with the insurance department of the state of Missouri. The defendant Blake is now superintendent of that department, and is now in possession and custody of such securities. The Cosmopolitan Life Insurance Association was a foreign corporation, organized under the laws of the state of Illinois, and made application to transact business in the state of Missouri on the stipulated premium plan, under article 4 of chapter 119 of the Revised Statutes of the state of Missouri of 1899. On making application to the insurance department of the state of Missouri it was informed by the then superintendent of insurance that it was the ruling of the insurance department of the state of Missouri that before a license under the stipulated premium law could be issued it would be necessary for the Cosmopolitan Association to deposit $5,000 in money or securities with the department. The construction placed upon the law by the department was, that all companies, foreign or domestic, must make such deposit before authority to do business in the state could properly be issued. The actuary of the department, Mr. Joseph B. Reynolds, also informed the company that it would be required to deposit $5,000 before securing a license in the state, under the stipulated premium law, for the reason that it had no such deposit in the state of Illinois, and that the Missouri department would require that the deposit, if not made there, must be made in Missouri, in order that it might be placed on the same basis as domestic companies under the same law. No requirement existed under the laws of Illinois for making said deposit with the Illinois insurance department and that department would not receive such a deposit. The Cosmopolitan Association at once arranged to make, and did make, the required deposit with the Missouri insurance department, and thereupon the license to do business in Missouri was granted to it by that department. Contemporaneously with this application on the part of the Cosmopolitan Association, that company had undertaken to reinsure the business of a fraternal insurance company,

known as the Royal Tribe of Joseph, then doing business in the state of Missouri, and the reinsurance agreement entered into between the two organizations was submitted to the insurance department of the state of Missouri for approval. That approval was granted upon the making of the deposit and the issuance of the certificate of authority or license as aforesaid, and thereupon the Cosmopolitan Association took over the business of the fraternal organization under said reinsurance agreement. This certificate of authority or license was renewed for one year upon the 1st of March, 1904, and again upon the 12th day of May, 1905, for a period terminating March 1, 1906, and the Cosmopolitan Association continued to do business in Missouri until the 1st day of January, 1906, when it withdrew from the state and requested that its certificate of authority and license be canceled. Meantime, the securities that it originally deposited, and which are the subject-matter of this suit, remained on deposit with the insurance department, and were left there without demand by the Cosmopolitan Association after its withdrawal from the state. Subsequently, and on or about the 9th day of September, 1909, an agreement was entered into between the Cosmopolitan Association and the Old Colony Life Insurance Company, a corporation organized under the laws of the state of Illinois, plaintiff herein, whereby plaintiff purchased all the assets of the Cosmopolitan Association of every character and description, and plaintiff agreed to assume all liabilities of said association for death claims, and all other liabilities of such association shown by an attached exhibit. Plaintiff further agreed that holders of stipulated premium policies in said Cosmopolitan Association should be entitled to receive, in exchange for their policies in said association, the plaintiff's "whole life nonparticipating policy" at the same rates of premium they had been paying to said Cosmopolitan Association, plus the increase in said rates necessary to conform to their attained ages; and on the same day the Cosmopolitan Association for valuable considerations, chief among which was the assumption of the risks of said association by plaintiff, transferred, conveyed, and assigned to the plaintiff, by writing duly executed, all the moneys, securities, books, records, office furniture, bills receivable, and all other personal or mixed property or effects belonging to said Cosmopolitan Association. Thereafter plaintiff by letter made demand upon the defendant as insurance superintendent for the recognition of plaintiff as the owner and assignee of the funds in his hands, and defendant refused until all of the outstanding policy holders who might be held to have the right to proceed against the deposit were satisfied. Coupled with this demand plaintiff asserted that it did not desire to withdraw this deposit from the insurance department of the state of Missouri until all the policies that were formerly issued by the Cosmopolitan Association were fully satisfied. This was done before the plaintiff company had investigated the nature of the deposit and the requirements of the law under which it was made. Meanwhile a number of suits were filed in Missouri against the Cosmopolitan Association, and in some cases against the plaintiff company, by persons holding policies in the Cosmopolitan Association issued while it was doing business in this state.

Judgments were afterwards secured against the Cosmopolitan Association, aggregating about $2,000 and some other small claims are pending. Steps were taken under the Missouri statutes to subject this deposit to the payment of these judgments. The plaintiff made demand upon the defendant for these securities, which demand was refused. This suit followed. The Cosmopolitan Association is no longer doing business, and has no assets out of which claims may be satisfied. The plaintiff now has assumed the obligations of the Cosmopolitan Association to the extent hereinabove set forth. It is doing a legal reserve life insurance business in the state of Illinois, and perhaps elsewhere, but not in Missouri. Its headquarters are in the city of Chicago, and it has on deposit with the insurance department of Illinois an aggregate of $221,000. The laws of Illinois do not know stipulated premium plan companies as defined in the laws of Missouri, and no deposits are there required or authorized from such companies, either foreign or domestic. It is conceded that there is no question of retaliatory law present in this case. At the time of the making of the deposit nothing was said or done with reference thereto by the representatives of the Cosmopolitan Association or of the state, except as hereinabove set forth, but the following certificate or license was issued:

"It is hereby certified that the Cosmopolitan Life Insurance Association of Freeport, Illinois, has complied with the requirements of the insurance laws of this state and is hereby authorized, subject to the provisions thereof, to do business of life insurance on the stipulated premium plan in the state of Missouri, until the first day of March, 1904."

Upon these facts the court found and held:

(1) The insurance laws of Missouri do not require a deposit with the insurance department by foreign insurance companies doing business in that state on the stipulated premium plan.

(2) Plaintiff is the owner of the securities sued for, and is not estopped from demanding the return of such securities from the defendant.

(3) That no trust was created vesting in the insurance commissioner, either as an official or as an individual, the right to hold these securities for the exclusive benefit of the Missouri policyholders of the Cosmopolitan Association, or otherwise.

(4) That the plaintiff is therefore entitled to recover.

The defendant requested the court to make the following declarations:

"If the court finds from the evidence that Robert G. Yates, on the 17th day of October, 1903, was the duly appointed, qualified, and acting superintendent of insurance of the state of Missouri, and on said date the Cosmopolitan Life Insurance Association was an insurance corporation organized and doing business under the laws of the state of Illinois, and on said date said Cosmopolitan Company made application through its managing officer for a certificate of authority to transact life insurance business in the state on the 'stipulated premium plan,' and as a prerequisite, among other things, was required to make a deposit of $5,000 as an insurance fund, and on said date did deposit said $5,000 with said superintendent of insurance of Missouri, in trust for the benefit of the policy holders of said company, and that from year to year until 1906, continued said deposit with the insurance department of Missouri, for the same purpose, and that thereupon said Cosmopolitan Company proceeded

to do an insurance business in this state on the stipulated premium plan, and wrote policies and collected the premiums therefor, and that said policies were still subsisting and in force when the plaintiff purchased and took an assignment of the benefits of said Cosmopolitan Company in October, 1909, and that losses accrued on said policies in this state, and the same have not been paid by said Cosmopolitan Company or plaintiff, when this suit was brought, nor up to this time, then plaintiff cannot recover in this action, and it will not avail plaintiff that such deposit may not have been required by the law of Missouri, and the plea of ultra vires will not avail plaintiff."

And again:

"The counsel for the Cosmopolitan having had the option to make the deposit to obtain the license, and having elected so to do, cannot now be heard to say it was 'involuntary,' and thereby reap all the benefits of a license and the increase of its business. The Cosmopolitan had no absolute right to a license, and could not have compelled the issuance to it of a license. There was no duress or fraud in the transaction.

"The superintendent construed the statute to require him to take the deposit, and the company accepted that construction, and both sides executed the agreement, and neither will be heard now to plead ultra vires, or that it was involuntary as to policy holders who have suffered losses in this state and are unpaid."

The court refused to make either of said declarations of law, and to each refusal the defendant at the time excepted.

The statutes of Missouri contain no express provision that foreign companies doing business on the stipulated premium plan shall make any deposit of securities before being authorized to do business. The insurance department did not so understand when it took these securities. Mr. A. C. Murray testifies that the Missouri Insurance Department first required that $5,000 in securities be deposited with the Illinois Insurance Department, and it was only after the Illinois department had refused to take the deposit that the demand was substituted that the securities be deposited with the Missouri department. Mr. Joseph B. Reynolds, the actuary of the insurance department of Missouri, says:

"They were told that they would be required to deposit $5,000 before securing the license in the state under the stipulated premium law, for the reason that they had no such deposit in Illinois, and that the Missouri department would require that the deposit, if not made there, must be made in Missouri, in order that they might be placed on the same basis as domestic companies are under the same law. That was not only what they were told, but was the rule of the department at the time."

It is quite clear that the demand for a deposit in Missouri was upon the broad equitable ground thus announced, and there was no claim that any Missouri statute required it; else why the offer to waive it, if the deposit was made in Illinois?

In his argument the defendant relies upon what is now section 6985 of the Revised Statutes of Missouri of 1909.

"When any such corporation, company or association shall desire to relinquish its business in this state, the superintendent shall, on application of such corporation under oath of its president or principal officer and secretary or actuary, give notice of such intention at least twice in a newspaper of general circulation published at the state capital. After such publication he shall deliver up to said corporation the securities, or any portion thereof, held by him

belonging to such corporation upon being satisfied that all the debts and liabilities of every kind are paid or provided for."

It is contended that the intent of the law must govern, and that a provision for the delivering up of securities would be foolish if no securities were required to be deposited. This is true, but section 6965, R. S. 1909, provides for the deposit of $5,000 in securities by domestic companies, and section 6983, R. S. 1909, contains this provision with reference to foreign companies:

"When any 'state, territory or foreign country shall impose any obligations upon any such corporation of this state, or their agents transacting business in such other state, territory or foreign country, the like obligations are hereby imposed upon similar corporations of such other state, territory or foreign country, their agents or representatives transacting business in this state; and such corporation, company, association or society of such other state, territory or foreign country, and its agents and representatives shall pay all licenses, fees or penalties to, and make deposits with the superintendent of insurance imposed by the laws of such other state, territory or foreign country upon any corporation of this state doing business therein; and in case of failure to pay the same, the superintendent shall refuse the certificate of authority herein provided for or cancel such certificate, if one shall have been previously issued."

Manifestly the provision in 6985 has reference to domestic companies, and to the only securities required to be deposited by foreign companies, and they are the ones referred to in section 6985 as to be returned. The Legislature could have required foreign companies to make a deposit in trust, and could have defined who its beneficiaries should be, and of what the trust should consist, but it did not do so. It follows that the securities were deposited without authority of law.

The question of the existence of a trust and of the estoppel of the plaintiff to deny such trust have been argued together, and will be so considered.

Ignoring any question as to the statute of frauds of Missouri, a trust in personalty may be established by parol evidence, but such evidence must be clear and convincing, not doubtful, uncertain, or contradictory. Allen v. Withrow, 110 U. S. 119, 129, 3 Sup. Ct. 517, 28 L. Ed. 90. Who was the beneficiary of the supposed trust, and what were its terms?

It appears that the laws of Missouri with reference to domestic stipulated premium companies provided in section 6965, R. S. 1909, that:

"Every corporation incorporating or reincorporating under the provisions of this article shall deposit with the superintendent of insurance such securities as are required by law to be deposited by insurance companies the sum of five thousand dollars before it shall commence business. Said five thousand dollars shall be a part of the insurance fund and an asset of the corporation. The securities deposited with the insurance department pursuant to this section shall be held by the superintendent in trust for the benefit and protection of and as security for the policy holders of such corporation, their legal representatives and beneficiaries."

There is nothing on the face of this statute that limits the benefits of the securities to domestic policy holders, and the insurance department was satisfied with a deposit in Illinois, which would certainly not have been for the exclusive benefit of policy holders in Missouri. These

securities were deposited and a certificate to do business in Missouri was issued, which made no reference to the securities. There was no declaration of trust, and nothing to indicate why or for whose security they were deposited. Mr. Yates, the then superintendent of insurance of Missouri, testified:

"They put up the money with the understanding—I don't know whether it was ever stated to him or not, but it was my understanding, and the reason why we demanded that was for the benefit of the policy holders which they had then, or might have in the future, in the state of Missouri, if they had any at that time."

There was nothing said between the parties as to who were the beneficiaries of the supposed trust. The insurance department thought it was to secure the Missouri policy holders, but there is nothing to indicate the Cosmopolitan Company so understood it, or understood the beneficiaries of the trust were different from what they would have been if the money had been deposited in Illinois. If we could ascertain who the beneficiaries were, whether all policy holders or only the Missouri policy holders, what policies did it secure? The holders of membership in the Royal Tribe of Joseph had no security, and there was no agreement they should have any. Was the trust simply for the benefit of insurers on the stipulated premium plan, or did it include the members of the former fraternal insurance society? We do not know and there is not a syllable of evidence tending to enlighten us. It is evident that if there was a trust, no individual has shown that he or his claim was secured by the trust by clear or convincing, or any other kind of, evidence and the whole matter remains doubtful and uncertain, and the same is true of the claim of estoppel which is not specially pleaded.

The case in this court of Illinois Life Insurance Co. v. Tully, 174 Fed. 355, 98 C. C. A. 259, is quite like the case at bar, and disposes of many of the questions argued here.

Reliance is placed upon Boston & Albany R. Co. v. Mercantile Trust & Deposit Co. of Baltimore, 82 Md. 560, 34 Atl. 778, 38 L. R. A. 97; Clark v. Callahan, 105 Md. loc. cit. 614, 615, 66 Atl. 618, 10 L. R. A. (N. S.) 616, 12 Ann. Cas. 162; Coyne v. Supreme Conclave, 106 Md. 54, 66 Atl. 704, 14 Ann. Cas. 870; Ruhe v. Ruhe, 113 Md. 595, 77 Atl. 797.

Special reliance is placed upon the first case, and upon the following language there used:

"In determining whether or not a trust has been created, courts will take into consideration the situation and relations of the parties, the character of the property, and the purpose which the settler had in view in making the declaration. No technical terms or expressions are needed."

But the defendant ignores that immediately following this language the court further said:

"It is sufficient if the language used shows that the settler intended to create a trust, and clearly points out the property, the beneficiary, and the disposition to be made of the property."

In this case the requirement that the settler clearly point out the beneficiary and the disposition to be made of the property is wholly

ignored. In that case the treasurer of state, in his receipt for the security, expressly stated:

"That said securities are now held by me, as such treasurer aforesaid, in my official capacity, on deposit as a guaranty for the payment of the policies of insurance issued by said company."

And in his separate schedule he referred to the—

"stocks and other securities * * * held by me in trust for the policy holders of the American Casualty Insurance and Security Company of Baltimore City."

Clearly there is no analogy between that case and this, and the same is true of the other cases cited.

Sufficient has been said to indicate that the defendant was not entitled to the declarations of law asked.

No error appears, and the judgment is affirmed.