# THE METAIRIE CEMETERY ASSOCIATION, Petitioner, *v.* COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 437. Decided September 22, 1926.

*Held*, under the evidence, that amounts received by the taxpayer under perpetual-care contracts were received in trust and are not taxable profits.

*George C. H. Kernion, Esq.*, for the petitioner.
*Ward Loveless, Esq.*, for the respondent.

This is an appeal from determinations of deficiencies in income and profits taxes for the fiscal years ended April 30, 1918, 1919, 1920, 1921, and 1922, in the net amount of $3,795.30.

The deficiencies arise on account of the action of the Commissioner in treating as income to the taxpayer amounts received by it under contracts for the perpetual care of cemetery lots.

## FINDINGS OF FACT.

The taxpayer is a corporation organized May 25, 1872, under the laws of Louisiana, and having its principal place of business in New Orleans. It was organized for the purpose of owning and operating a cemetery. Its original charter provided for an existence of 99 years. A special act of the legislature, however, was passed March 22, 1873, amending the original act of incorporation dated May 25, 1872, which, among other things, granted to the taxpayer perpetual existence.

In 1908 the Legislature of Louisiana passed Act 190, which is as follows:

AN ACT in relation to the conveyance, devise, use and preservation of burial lots and tombs in cemeteries.

Section 1. Be it enacted by the General Assembly of the State of Louisiana, That any burial lot or tomb in any cemetery controlled by any company or association incorporated for cemetery purposes under any general or special law of the State of Louisiana, may, by the owner or owners, be conveyed or devised back to and held by such company or association in perpetual trust for the purpose of its preservation as a place of burial, and shall thereafter remain forever inalienable by act of the parties, but the right to use the same as a place of burial of the dead of the family of the owner and his descendants shall descend from generation to generation unless the deed of conveyance in trust shall provide that interments in such lots or tomb shall be confined to the bodies of specified persons, in which case such lot or tomb shall be forever preserved as the burial place of the persons specified in the deed and shall never be used for any other purpose whatever; provided, however, that in all cases where in addition to the cemetery corporation there is a special corporation or board of trustees created for the purpose of taking and preserving an improvement fund or funds for the respective cemetery, then and in such cases such

conveyance in trust of burial lots or tombs to be held in perpetuity may be made to and held by such special corporation or board of trustees, upon the same trusts, provisions and conditions as are above provided in case of conveyances to cemetery companies; provided further, however, that no conveyance in trust authorized by this Act shall be made without the consent of the cemetery company or association in whose cemetery such burial lot or tomb is located.

From December 4, 1896, the taxpayer began to make contracts with lot owners in the cemetery to perpetually upkeep and maintain certain burial places in its cemetery. These contracts were known as contracts in perpetuity. On May 12, 1891, the board of directors passed a resolution at a meeting duly called, at which a quorum was present, with respect to the funds donated by owners in the cemetery for such purpose. That resolution is as follows:

Your Finance Committee, charged specially with the duty of "formulating some plan or agreement to govern this Association in receiving donations or bequests for the care of tombs" respectfully recommends the following for adoption:

Whereas, there is manifest a disposition on the part of tomb-owners to make money donations to the Metairie Cemetery Association, in consideration of which the said Association shall obligate itself to keep in perpetuity the tombs and surrounding grounds of such owners in good order, the usual wear and tear of material excepted, therefore

Be it resolved: That all sums heretofore donated, or that may hereafter be donated, for the above purposes shall be recognized as TRUST FUNDS, and shall be invested from time to time in such manner as the Finance Committee, subject to the approval of the Board of Directors may direct, the income accruing therefrom to be alone expended.

Be it further resolved: That the obligations to be assumed by this Association shall be held to mean such proper care of the grounds and tombs, as is commonly understood should be rendered by the Superintendent and his assistants, and do not apply to any usual wear and tear of material, or to damage to the property resulting from forces beyond their control.

Be it further resolved: That all receipts for donations of this character shall distinctly state the amount given, clearly define the property to be cared for, and embody this preamble and resolutions as explanatory of the contract made.

Subsequent to 1908 the types of contracts in perpetuity in use by the taxpayer were as follows:

THAT FOR AND IN CONSIDERATION of the sum of Three Hundred Dollars $300.00 in lawful money of the United States, paid by the said Mrs. Joseph Voegtle at these presents, unto the Metairie Cemetery Association, the receipt for which is hereby acknowledged and full acquittance therefor granted by the said Simon Pfeifer, Vice-President and Samuel H. Bell, Secretary, of said Association, THE METAIRIE CEMETERY ASSOCIATION does hereby covenant, contract and binds itself, its successors and assigns, at all times and in perpetuity from the date of these presents, to take care of and maintain in good order and condition in the manner and to the extent hereinafter stated the coping of Mrs. Jos. Voegtle, known as Plot 3, in Section C, located in the Metairie Cemetery, so designated on plan of said Cemetery, drawn by Helmuth Holtz and on file in the office of the said Cemetery Association in the said city

of New Orleans: To repair the stone-work, to keep the joints pointed, to keep the stone-work washed down, to keep the mound filled to grade, to keep the grass cut and renew same when necessary, to keep the palms or plants in good order should there be any and replace same should they die from any cause, to resurface the Schillinger side-walk should it at any time become necessary, and not to use any acid or other substance upon said coping that may tarnish, deteriorate or in any manner injure same.

THAT FOR AND IN CONSIDERATION of the sum of Five Hundred Dollars $500.00 in lawful money of the United States, paid by the said Herman Weil at these presents, unto the Metairie Cemetery Association, the receipt for which is hereby acknowledged and full acquittance therefor granted by the said Samuel H. Bell, Secretary of said Association, THE METAIRIE CEME-TERY ASSOCIATION does hereby covenant, contract and binds itself, its successors and assigns, at all times and in perpetuity from the date of these presents, to take care of and maintain in good order and condition in the manner and to the extent hereinafter stated the coping of Herman Weil, known as Plot 1, Section 39, in the Metairie Cemetery, so designated on plan of said Cemetery, drawn by Helmuth Holtz and on file in the office of the said Cemetery Association in the said city of New Orleans: To keep the coping in repair, to keep the joints pointed, to keep the stone-work washed down, to keep the mound filled to grade, to keep the grass cut and renew same when necessary, to keep the plants or shrubbery in good order and replace same should they die from any cause, to plant winter seed annually, to repair or resurface the Schillinger side-walk should it at any time become necessary and not to use any acid or other substance upon said coping that may tarnish, deteriorate or in any manner injure same.

It is understood and agreed that the amount of $500.00 received as above acknowledged is deposited by Herman Weil and will be held in trust by this organization for him and his heirs and the income only of the above stated deposit is to be used and shall cover as recompense for the services to be rendered in the upkeep of the above stated plot and in accordance with the manner as above described. Further, that the agreement of payment through this income shall be accepted as fully covering all charges and that this agreement shall continue perpetually.

The above copies of contracts are given as illustrations of the two kinds of contracts. In one of the contracts there was a specific provision to the effect that the amount received by the taxpayer was received in trust for the lot owner and his heirs and that the income only of the amount deposited was to be used for the purpose of upkeep of the cemetery lots and in accordance with the terms of the contract, and that such agreement should continue perpetually.

During the taxable years involved in this appeal these same forms of contracts were used. The contracts for perpetual upkeep of burial places are separate and distinct from contracts for the sale of the lots themselves.

From the date of the organization of the corporation up to April 30, 1922, the taxpayer had entered into 411 perpetual-care contracts for a total consideration of $131,377.50. Of this total, thirteen contained a clause or provision to the effect that the money received

by the corporation for the perpetual care of lots was received in trust and that only the interest therefrom should be used and could only be used for the specific purposes provided in the contract. The total consideration received by the taxpayer under these thirteen contracts was $6,625.

Up to December 31, 1917, there had been paid in on these perpetual-care contracts a total amount of $61,863.50. Of this amount $3,700 represented the amount paid in on the contracts which contained the specific provision with respect to the trust character of the fund.

Total contracts of perpetual care were entered into during the taxable years involved as follows:

|  | Number | Amount |
|---|---|---|
| Four months ended April 30, 1918 | 12 | $3,010.00 |
| Fiscal year ended April 30, 1919 | 37 | 11,345.00 |
| Fiscal year ended April 30, 1920 | 61 | 17,360.66 |
| Fiscal year ended April 30, 1921 | 71 | 21,361.34 |
| Fiscal year ended April 30, 1922 | 62 | 16,437.00 |

Of the above-mentioned contracts the following number and amounts were of the type which contained no specific provision with respect to the trust character of the funds:

|  | Number | Amount |
|---|---|---|
| Four months ended April 30, 1918 | 1 | $150.00 |
| Fiscal year ended April 30, 1919 | 2 | 1,300.00 |
| Fiscal year ended April 30, 1920 | 1 | 125.00 |
| Fiscal year ended April 30, 1921 | 2 | 300.00 |
| Fiscal year ended April 30, 1922 | 3 | 1,050.00 |

The remainder of these contracts and the amounts paid in thereunder were paid in under the contracts which contained no specific provision with respect to the trust character of the funds received.

The consideration received by the Metairie Cemetery Association under all these perpetual-care contracts was entered on the taxpayer's books and records under accounts headed "Bequests (perpetual care)."

The basis for determining the consideration expressed in the contracts for the perpetual care of the lots was to approximate the cost of the upkeep of the respective lots per annum and then require the plot owner to pay to the taxpayer an amount which, placed in bonds bearing 4 per cent per annum, would yield that amount to the taxpayer annually. The amount of the cost of caring for the respective lots varies in accordance with the size, location and character of the tomb or tombs on the lots.

During the taxable years involved the Commissioner treated as income taxable to the taxpayer on account of these perpetual-care contracts the following amounts:

| | |
|---|---:|
| Four months ended April 30, 1918 | $3, 101. 00 |
| Fiscal year ended April 30, 1919 | 11, 345. 00 |
| Fiscal year ended April 30, 1920 | 17, 560. 16 |
| Fiscal year ended April 30, 1921 | 21, 361. 34 |
| Fiscal year ended April 30, 1922 | 16, 437. 00 |

The Commissioner of Internal Revenue also included in the computation of the taxpayer's invested capital for the following years the following amounts of perpetual-care funds:

| | |
|---|---:|
| Four months ended April 30, 1918 | $61, 863. 50 |
| Fiscal year ended April 30, 1919 | 64, 873. 50 |
| Fiscal year ended April 30, 1920 | 76, 218. 50 |
| Fiscal year ended April 30, 1921 | 93, 579. 16 |
| Fiscal year ended April 30, 1922 | 114, 940. 50 |

The cash investments and reserve for perpetual-care bequests appearing on the taxpayer's books and records were as follows:

| | Cash | Invest-ments | Bequests (perpetual care) |
|---|---:|---:|---:|
| April 30, 1918 | $13, 444. 71 | $64, 273. 56 | $64, 873. 50 |
| April 30, 1919 | 28, 434. 18 | 74, 544. 56 | 76, 218. 50 |
| April 30, 1920 | 28, 548. 37 | 90, 740. 49 | 93, 579. 16 |
| April 30, 1921 | 15, 188. 73 | 116, 879. 56 | 114, 940. 50 |
| April 30, 1922 | 24, 189. 93 | 133, 933. 00 | 131, 377. 50 |
| April 30, 1923 | 30, 276. 30 | 143, 661. 14 | 148, 546. 50 |
| April 30, 1924 | 29, 747. 74 | 166, 119. 36 | 166, 137. 00 |
| April 30, 1925 | 54, 766. 12 | 180, 521. 86 | 184, 462. 00 |

On October 10, 1924, the board of directors of the Metairie Cemetery Association, at a special meeting at which a quorum was present, adopted the following resolution:

Whereas the Metairie Cemetery Association, by virtue of an Act conferring upon it certain additional powers and privileges, approved March 22, 1873 by William P. Kellogg, Governor of the State of Louisiana, was granted, under Section 4 of said Act, perpetual existence.

Whereas, by virtue of the perpetual existence granted to this Association by the above-mentioned Act, this Association since December 4, 1896 has been making written contracts with owners of burial places in Metairie Cemetery, known as Contracts in Perpetuity, whereby, in consideration of certain amounts deposited with the Metairie Cemetery Association in trust by said owners of burial places, this Association has agreed to perpetually take care of said burial places:

Whereas these Contracts in Perpetuity made by this Association were authorized by the Board of Directors of this Association at a meeting duly held at its office in the City of New Orleans on May 12, 1891, at which a quorum was present, when a resolution was passed authorizing the receipt by this Association from owners of burial places of certain amounts for the perpetual care of

said burial places, and providing that all sums so paid shall be recognized as trust funds, shall be invested in such manner as the Finance Committee, subject to the approval of the Board of Directors, may direct, and that the income alone accruing from such sums shall be expended by this Association:

Whereas at the time that all such Contracts in Perpetuity were made by this Association it was distinctly stated and understood by all contracting parties thereto that all amounts paid by owners of burial places to the Metairie Cemetery Association on such Contracts in Perpetuity was received by this Association in trust for the said owners paying same and their heirs forever:

Whereas, however, in most of the said Contracts in Perpetuity it was not stated in writing that the amount paid by the owner of a burial place to the Metairie Cemetery Association is received by this Association in trust for the said owner and his heirs forever, and that the income only of said amount deposited with this Association will be used by this Association to cover the cost of perpetual upkeep of the burial place of said owner making said Contract in Perpetuity:

Whereas the omission of this express stipulation in the written contract, which stipulation, however, had been made verbally by the parties to such contracts at the time such contract[s] were made, has given rise to a question on the part of the United States Internal Revenue Department of the fact that such amounts received by this Association on such Contracts in Perpetuity were really trust funds:

Be it resolved, that in order to settle finally and unequivocally and for all time past and to come the question that all amounts received by this Association from December 4, 1896 to the present time and all time thereafter, on such Contracts in Perpetuity were received and will be received by the Metairie Cemetery Association in trust from the owners of burial places, making or having made such contracts, and that the income accruing on said amounts would be used by this Association to cover the cost of perpetual upkeep of burial places, as stated in such contracts, this Association hereby authorizes its Secretary, Mr. Numa V. Bertel, to address in his official capacity and under the seal of this Association, to all owners of burial places who have made since January 1, 1916 to the present time, such Contracts in Perpetuity with this Association, a copy of these resolutions, by registered mail, at their last known address, if living, or at the last known address of their legal representative, if now dead, with the request that this resolution be attached by them to their Contracts in Perpetuity as evidence of the fact that at the time all such Contracts were made it was distinctly understood and stated verbally, if not in writing, that the principal of all amounts paid to this Association on such contracts was received by this Association in trust for the owners of burial places so paying, and their heirs forever, and that the income accruing from said funds alone would be used by this Association to cover the cost of perpetual upkeep of said burial places:

Be it resolved further that the Secretary of this Association, Mr. Numa V. Bertel, is also authorized to give due publicity to the above Resolution by notice printed in the Times-Picayune, the Item and the Daily States, daily newspapers of New Orleans, so that all parties who at any time since December 4, 1896 to the present time made such Contracts in Perpetuity with this Association understand what their rights under said contract[s] were at the time said contracts were made.

Under date of October 18, 1924, a letter was addressed by the taxpayer corporation to all lot owners who had entered into perpetual-

care contracts, with which letter a copy of the resolution of the board of directors set out above was enclosed.

Under date of October 21, 1924, the taxpayer had published in the Times-Picayune, New Orleans Item, and New Orleans States, a special notice to all persons who had at any time made contracts in perpetuity with the Association to call at the office for a copy of the resolution of October 10, 1924.

While there were only thirteen of the perpetual-care contracts entered into during the taxable years involved which contained a specific provision to the effect that the funds received under such contracts were received in trust by the taxpayer, the other contracts entered into during the taxable years, as well as all of the contracts of perpetual care, were entered into with the specific understanding on the part of the corporation and the lot owners that the funds received by the corporation under such contracts would be held in trust for the specific purposes mentioned in the contract. The fact that the funds were received in trust was specifically explained to the lot owners by an officer of the corporation when the contracts were signed and it was definitely understood by all concerned that such funds were to be held in trust.

### OPINION.

TRAMMELL: The Commissioner concedes that if the Board finds as a matter of law that the amounts received by the taxpayer under the perpetual-care contracts were received in trust, then the amounts are not taxable to the taxpayer but that the case would then be controlled by the decision of the Board in the *Appeal of Los Angeles Cemetery Association*, 2 B. T. A. 495. If the amounts received under the contracts were not received in trust, the case is controlled by the decision of the Board in the *Appeal of Springdale Cemetery Association*, 3 B. T. A. 223.

The great weight of authority is to the effect that the statute of frauds does not extend to trusts of personal property and that such trusts may be created and proved by parol. *Chew v. Brumagen*, 13 Wall. 497; *Allen v. Withrow*, 110 U. S. 119; *Trubey v. Pease*, 240 Ill. 513; 88 N. E. 1005; *Coyne v. Supreme Conclave*, 106 Md. 54; 66 Atl. 704; *Bork v. Martin*, 132 N. Y. 280; 30 N. E. 584; *Pittman v. Pittman*, 107 N. C. 159; 12 S. E. 61.

There is no conflict in the evidence here with respect to the contracts. The evidence is that at the time the contracts were entered into it was agreed that the money would be held in trust for the specific purposes of the contract. This being true, we are of the opinion that a valid trust was created by parol in those contracts

where there was no specific provision to that effect. The only reason that certain of the contracts contained that express provision was the fact that those lot owners insisted upon the agreement being included in writing in the contract. The same agreement, however, was actually made with all of the lot owners verbally.

The funds received by the taxpayer from the lot owners having been received in trust for the specific purpose of caring for and maintaining burial places gave rise to no taxable income to the taxpayer. See *Appeal of Los Angeles Cemetery Association, supra.*

*Judgment for the petitioner.*