GEORGE PRICE *v.* MEDFORD L. PRICE ET AL.
[No. 29, April Term, 1932.]

*Decided June 21st, 1932.*

The cause was argued before BOND, C. J., URNER, OF-
FUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. Alan Goldsborough,* for the appellant.

*Wm. Mason Shehan* and *G. Elbert Marshall,* for the ap-
pellees.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for
Caroline County dismissing the bill of complaint. The bill
in substance alleges that in 1925 the appellant, George Price,
a man sixty-eight years of age, was the owner of about $27,-
000 of personal property, consisting of mortgages, notes and
certificates of deposit; that on March 9th, 1925, he was mar-
ried for the second time, his first wife having died in 1923,
she being the mother of his eight children; that, very shortly
after the second marriage, the wife left the complainant, and,
while he was in a state of "distress and distraction," certain
representatives of his children told him that his wife was
about to institute various forms of litigation against him

658

which would result in his being "stripped of everything he had," and advised that he should temporarily transfer his property to one of his sons, Medford L. Price, which he finally did, without consideration, and with the understanding that the property would be turned back to him "as soon as he got his affairs straightened out"; that the transfer was made on March 23rd, 1925; that a few days after the transfer the appellant, "who realized that he should face any situation which might arise without subterfuge," went to his son Medford Price and told him he decided to take his property back, and not attempt to cover anything up; that his son told him that he would immediately retransfer and redeliver the property, but that it was in the bank at Church Hill and that he could not get it until the next day; that appellant at no time had any intention of preventing his wife from taking what she would be entitled to under the law in case of his death, but only the purpose of trying to forestall litigation which would not be in the interest of either his wife, his children or himself; that some time in the summer or early fall of 1925 the wife returned to him, remaining about two months before finally deserting him; that the appellant's children were advised that they were the subject of criticism in the community for having stripped their father of his property, and that, if something were not done to in whole or in part stop such criticism, the appellant could easily set aside the aforementioned disposition of his property; that the children were further advised that "the best thing they could do in an endeavor to prevent your orator from getting his property back 'would be to execute what was termed a deed and declaration of trust,' a paper so-called having been executed by your orator's children," the said deed and declaration of trust being the basis of the proceeding known as *"In the Matter of the Trust Estate of George Price et al.,"* No. 2597 Chancery, in the Circuit Court for Queen Anne County; and accompanying the bill as an exhibit was filed a copy of the "deed and declaration of trust." The prayers of the bill were that the deed and declaration of trust be declared null and void, and that the

property, in whatever form it may now be, or however it may now be held, be reconveyed and redelivered to the complainant.

The deed and declaration of trust is executed by the eight children of the appellant, and recites that the appellant, being a man of advanced years and desiring for business purposes and personal reasons to give up and to settle upon his children certain property belonging to him, did actually transfer and deliver said property to one of his sons, Medford L. Price, for the benefit of the said Medford L. Price and the appellant's other children; and, further, that the said children, having been fully apprised of the actual gift, transfer and delivery of the property from their father to Medford L. Price, and having accepted the same, desired to provide a competency for their father, and deemed it wise and prudent that this deed and declaration of trust be made by all of the parties thereto, being the children of George Price, and especially by Medford L. Price, who was then the holder in actual possession of the property, securities, notes, mortgages and certificates of deposit; and further that the appellant had actually indorsed, assigned, transferred, given and delivered to Medford L. Price for the benefit of all of his eight children, and Medford L. Price had received and holds, the following mortgages, notes and certificates of deposit; then, after describing the securities, the deed further declares that the property be held by Medford L. Price as trustee, to hold and invest the trust estate, collect and receive the income therefrom, and, after paying costs of administration, to pay the income to the appellant during the term of his life, and after his death the trust to cease and determine and the trust property to be divided equally, share and share alike, between his children then living, and, in the event one or more of the children should predecease their father, then the interest of a deceased child to be paid to such person or persons as shall, at the time of the death of the said child, be, under the laws of the State of Maryland, entitled to the same as next of kin of said deceased child. It further provides that, in event the trustee named should resign or die

before the termination of the trust, his successor should be appointed by such court of competent jurisdiction as may have assumed jurisdiction of said trust, and, in the event no court had assumed jurisdiction, then a majority of the children then living should nominate and appoint a new trustee. This instrument was signed by all of the children of the appellant.

After the filing of an answer by the appellees, testimony was taken in open court, and on the material questions involved was in sharp conflict. The evidence on behalf of the plaintiff is confined to his own testimony, supporting the allegations of the bill of complaint, and may be briefly summarized as follows: That after his second wife left him in March, 1925, he received information, which he believed to have been instigated by his children, that his wife would institute proceedings against him for support and alimony, which would result in her getting his property; that thereupon he wrote to his son-in-law, Mr. Evans, asking that he advise him as to the best course to pursue, and upon advice of Evans he sought counsel in the person of Mr. Legg; that he (Evans) and another son-in-law, Mr. Cronshaw, visited Mr. Legg's office, and he told Mr. Legg of the conditions and asked his advice; that he was advised that he had better transfer his property temporarily until matters could be "straightened out," after which time he could get it back; that he thereupon, with this understanding and advice, indorsed and transferred all of the securities to his youngest son, Medford L. Price; that a few days after the transfer, after time for reflection and decision, he called upon his son Medford for the return of the securities, but was given excuses for the nonreturn, and after several requests was told that he (Medford) could not redeliver the property because of the declaration of trust.

The witnesses on behalf of the appellees were the defendant, Medford L. Price; the appellant's son-in-law, Milo Evans; Mr. Legg, the attorney; and T. Clayton Horsey, clerk of the Circuit Court for Caroline County and cashier of the Caroline County Bank. Their testimony is in direct

conflict with the appellant's, and establishes beyond reasonable question that, after the appellant's wife left him, he desired to place his property in such position as would enable him to receive the income therefrom during his life, and after his death to divide it equally among his children, all of whom, together with their mother, the appellant's first wife, had participated in the accumulation of the property; that, in furtherance of this desire and plan, he consulted with Mr. Evans and was advised by him to see an attorney; that subsequently Evans saw Mr. Goldsborough and was told that, in view of the fact that the appellant's then wife had consulted him in regard to her rights, he could not advise the appellant; after which the appellant himself selected Mr. Legg, and advised with him on several occasions, and was told that he could transfer the property, all of which was personal property, to some one who would carry out his wishes in regard thereto; that the appellant then selected his son Medford, in whom he told Mr. Legg he had full confidence; whereupon the assignments and transfers were prepared on the instruments by Mr. Legg and duly signed by the appellant and delivered to Medford Price, whom he had selected to act in the capacity of trustee; that the assignments of the mortgages were acknowledged and duly recorded among the land records of Caroline County within two days of their execution; that Medford Price, after receiving the securities, being inexperienced, was uncertain as to what he should do with them; whereupon he consulted his brother-in-law, Mr. Evans, and they together sought Mr. Horsey, the cashier of the bank, and secured a safe deposit box at the bank in which to deposit the securities; that Mr. Horsey suggested that they see Mr. Goldsborough, and Mr. Goldsborough, for the reasons already given by him, was unable to advise them, but referred them to Mr. Shehan of Easton; that Medford Price visited Easton and laid the case before Mr. Shehan; whereupon, for the purpose of making certain the plans and purposes of the appellant in turning the securities over to Medford Price, he prepared and had executed by all of the children of the appellant the declaration of trust

filed as an exhibit in this case, which declaration specifically provides for and carriers out the plan and purposes of the appellant as established by the great preponderance of the testimony in the case. Later, the appellant apparently repented of his action, and now desires to have cancelled the declaration of trust, and the property returned to him. This, we think, the law does not permit him to do.

It is a firmly established principle that a parol declaration of trust of personal estate is sufficient. *Smith v. Darby*, 39 Md. 268; *Clark v. Callahan*, 105 Md. 600, 66 A. 618; *Coyne v. Supreme Conclave*, 106 Md. 54, 66 A. 704; *Baker v. Baker*, 123 Md. 32, 90 A. 776. In *Taylor v. Henry*, 48 Md. 550, Judge Alvey, speaking for the court, stated: "The cases upon this subject establish the doctrine to be, that where a person intends to give property to another, and vests that property in trustees, and declares a trust upon it in favor of the subject of his bounty, by such acts, the gift is perfected, and the author of the trust loses all dominion over it; and in such gifts of mere personal estate, the declaration of trust may be made and proved by parol, without the aid of writing, * * *. And, if the transaction by which the trust is created be complete, it will not be treated as invalid for want of consideration." See *Milholland v. Whalen*, 89 Md. 212, 43 A. 43. For the purpose of establishing such a trust, the evidence must be clear and unmistakable, both of the intent and the execution of that intent; and courts will take into consideration the situation and relation of the parties, the character of the property, and the purpose which the settlor had in view in making the declaration. No technical terms or expressions are needed. It is sufficient if the language used shows that the settlor intended to create a trust, and clearly points out the property, the beneficiary, and the disposition to be made of the property. *Taylor v. Henry, supra; Coyne v. Supreme Conclave, supra.* It is unnecessary to multiply authorities which might be cited, including other decisions of this court, and the authorities generally. Where the subject of the trust is personal estate, the whole interest is, in general, vested in the trustee by a gift without any words of

limitation. *Hanson v. Worthington,* 12 Md. 419. When a trust is validly and legally created, with no power of revocation reserved by the settlor, it cannot thereafter be revoked merely because the settlor has undergone a change of heart, or feels that he has done something which he desires to undo. *Smith v. Darby, supra,* wherein it is said: "This principle is too well established to need any citation of authorities in its support". See *Baker v. Baker, supra.*

The law applicable to the proven facts in this case definitely establishes that the appellant created a trust of the fund mentioned in the evidence, naming his son Medford L. Price trustee, for the use and benefit of himself during his lifetime; and after his death, the trust to cease, and the corpus, and any accumulated income, to be divided among his children. We therefore have every essential to the creation of a valid trust; that is to say, the subject-matter of the trust, the trustee, the *cestui que trust,* and the objects and duration thereof. These elements, in our opinion, are clearly and definitely established, under circumstances which leave no room to doubt the intention of the settlor and the underlying reason for such purpose. The trust property had been accumulated by the combined hard work and economy of the settlor, his children, and their mother, who at the time of the creation of the trust was deceased; and the second wife had deserted the settlor, creating in his mind a fear of litigation for support and alimony. He did not act hastily, but consulted with members of his family, and also had the independent advice of a competent attorney and a banker, before taking the step. In addition, he ratified his parol creation of the trust by accepting, from the time of its creation at least up to the institution of this suit, the entire net income from the fund. The only effect of the executed declaration of trust by the trustee and the other children of the appellant was to reduce to writing and make a permanent record of the terms of the parol trust created by the appellant. There was no error in the order of the chancellor dismissing the bill, and the same will be affirmed.

*Order affirmed, with costs to the appellees.*